EASTERN SHORE PUBLIC SERVICE COMPANY, a corporation of the State of Delaware, and THE PENNSYLVANIA COMPANY FOR INSURANCES ON LIVES AND GRANTING ANNUITIES, a corporation of the Commonwealth of Pennsylvania,

Defendants Below, Appellants,

*vs.*

THE TOWN OF SEAFORD, a Municipal Corporation of the State of Delaware,

Complainant Below, Appellee.

*Supreme Court, On Appeal, July* 28, 1938.

200

LAYTON, C. J., HARRINGTON, RICHARDS, RODNEY, and SPEAKMAN, JJ., sitting.

*Hastings, Stockly & Duffy*, and *Saul, Ewing, Remick & Saul*, of Philadelphia, Pa., for Pennsylvania Co., Trustee, intervening defendant below.

*Frank M. Jones* and *James M. Tunnell, Caleb S. Layton*, of the firm of Richards, Layton & Finger, and *F. W. C. Webb*, of Salisbury, Md., for original defendant.

*Marvel, Morford, Ward & Logan* (*Ralph S. Baker*, of counsel), for Town of Seaford.

LAYTON, C. J., delivering the opinion of the Court:

All corporations, including municipal corporations and those organized for the purpose of providing municipal public utilities, derive their power and privileges from the State which, primarily, has absolute control of all public highways and streets within its territorial limits. Franchises to erect, operate and maintain municipal public utility plants are granted either by the State, or by the municipality acting under authority delegated to it. The statute (§ 2188, *Rev. Code* 1935) is a grant of power by the State, without limitation as to time, to corporations organized under the general law for the supply and distribution of electric current for light, heat and power to erect the necessary pole lines upon the public highways of the State. With respect to highways located within the limits of certain governmental units, such as municipalities, the grant of power is not absolute. The need for the existence of local governmental subdivisions, and for some measure of local self-government therein are recognized by conditioning the enjoyment of the general grant of power upon obtaining the consent of the proper authority of the local unit within whose limits the power is sought to be exercised. The franchise conferred by the State is of no practical value, therefore, until supplemented by the consent of the municipality or other subordinate governmental subdivision. *Blair v. Chicago*, 201 *U. S.* 400, 26 *S. Ct.* 427, 50 *L. Ed.* 801.

The municipality, in granting or withholding its consent, exercises a delegated power, and, as it is a creature of the Legislature, it can place no condition or limitation on the corporation in the exercise of its franchise inconsistent with those which have been imposed by the State. The nature and extent of the powers of municipal corporations under a statute of the kind under discussion necessarily must depend upon the particular statutory language; but when the power to consent is expressed in general terms and is free from restrictions, the policy of the law is to

permit the munciipality to impose reasonably necessary and proper restrictions or conditions upon the exercise of the granted power including a limitation of the franchise period. *Pond, Public Utilities, Sec.* 90.

The appellants, while not questioning the principle, contend earnestly that, by clear implication, the Legislature did place a restriction upon municipalities with respect to the consent authorized to be given by them; wherefore, the Town of Seaford, they contend was forbidden to limit its consent to a definite period. Basing their contention upon the authority of *Dakota Central Telephone Co. v. City of Huron,* (*C. C.*) 165 *F.* 226, they argue that the State's grant of power to the corporation to operate its business within the limits of the town was conditioned upon its obtaining the consent of the municipality to the initial erection of the necessary pole lines, and that consent once being had, the power reposed in the town was exhausted, and a limitation of the life of the consent was beyond the power delegated to it. In the cited case it appeared that the constitution of South Dakota provided that no telephone line should be constructed within the limits of any village, city or town without the consent of the local authorities. The City of Huron, by ordinance, granted to an individual the right to place, construct and maintain a telephone line, but limited the right to ten years. The grantee erected the line, operated it for six years, and sold to the complainant which, by its charter, was authorized to purchase, lease, construct and operate telephone lines and exchanges. Before the expiration of the ten year period the city notified the complainant that it would not renew the franchise, and to vacate its streets at a fixed time. The complainant asked for a perpetual injunction against the city. In these circumstances it was held that the constitution of the State required consent to the construction, not to the maintenance and operation, of telephone systems; and that, as the right of the complainant to maintain and operate the system was

not derived from the City but from the State, it was not affected by the limitation of ten years imposed by the ordinance.

In the instant case, the consent required to be obtained is a consent to use the public highways of a municipality for the purpose of *erecting* the poles to sustain the necessary wire and fixtures. The Chancellor, in his opinion herein, 22 *Del. Ch.* 288, 2 *A.* 2d 258, distinguished the cited case by pointing out that the word "use" embodies the idea of continuity, while the word "construct" may mean a single completed act, having no relation to continuity of time; and he held the authority to be of no value. That there is a difference in words admits of no doubt, and we are not disposed definitely to disagree with the Chancellor with respect to the distinction drawn by him. It is not highly important that we do so, for whether the distinction is a valid one or not, we are not disposed to be bound by the reasoning of the case. It would seem, however, that the word "construct," as used in the South Dakota constitution, *Art.* 10, § 3, *Const. S. D.,* reasonably is possessed of a broader meaning than the mere act of erecting equipment, and carries with it the notion of operation after construction. It is a narrow concept to hold that a consent to construct has no relation whatever to maintenance and operation, and that, while the consent to the general proposal was limited to ten years, yet the consent of the City, as expressed in its ordinance, was divisible, so that, while the consent to construct satisfied the constitutional requirement, the limitation of ten years was beyond the City's constitutional power. Conceding, *arguendo,* that the cited case is an authority for the appellants' contention, its argumentation proceeds upon too narrow and technical a ground to satisfy our minds, and we decline to follow it. Perpetual franchises are not favored. The disadvantages and positive evils resulting from them in a changing and progressing world are well known. Certainly the Legislature may

grant a franchise in perpetuity. The power to do so may be delegated to a municipality. But the purpose and intent to grant a perpetual franchise should clearly and affirmatively appear. Such dangerous and irrevocable privileges ought not to rest upon mere inference or strained construction. We cannot agree that a municipality, having the power to consent to construction without limitation or restriction, has, in limiting generally its consent to the operation of the enterprise to ten years, by legal construction, given a consent in perpetuity.

The statute under consideration authorizes a municipality to confer upon certain public utility companies the right to enjoy the State granted power within its limits in perpetuity; and, if the consent given by the municipality, either in express terms or by necessary implication, is without limitation, the right to perpetual enjoyment of the franchise results from the unlimited and unrestricted consent. But the consent at the time it was granted may be limited as to time, and the question presented by the record is whether, upon the evidence, the consent given by the town to the predecessor of the appellant company was, in fact, limited or unlimited. Strangely enough there was produced no written evidence of the consent originally given either by resolution, ordinance, correspondence between the parties, or other documents, and were it not for pertinent extrinsic oral testimony and acts of the company and its predecessor, we would be confronted with the necessity of considering the question of the extent of consent, and, therefore, of the life of a franchise, in a situation where no evidence whatever of consent appears except as inferable from permitted construction, acquiescence in operation, and contractual relations with the company.

However, there is evidence that just prior to June 9, 1915, Mr. Cooper, the secretary and general manager of the company then operating the utility in the town, went before the Town Council and stated that the franchise un-

der which his company was operating was about to expire; that his company was negotiating the sale of its property and business to another; that without a franchise, practically, it would have nothing to sell; that the proposed purchaser, as a condition to concluding the negotiation, insisted upon a twenty-year franchise; and that his company, therefore, requested the Council to grant such franchise. The franchise was granted. The sale was completed, and the appellant company continued to operate the utility under the franchise.

This testimony was not explicitly denied. It is true that Mr. Cooper said that he thought the town's witness, Mr. Donoho, was mistaken in stating that he, Cooper, had said that the company's franchise was about to expire, because as he said, the company was operating under the assumption that it had a perpetual franchise, and that the twenty-year franchise was requested only to please the prospective purchaser; but, in cross examination, he limited himself to saying that he did not recall having made the statement attributed to him.

There was, therefore, before the Chancellor evidence of an explicit statement made by the secretary and general manager of the then operating company that its franchise was about to expire, and undisputed evidence that the company requested and accepted a twenty-year franchise which, by the sale, passed to the appellant company and under which it operated until its expiration.

It need not be decided whether the request for and acceptance of the limited franchise created as against the company and its successors a true estoppel *in pais*. See *Tubbs v. Lynch*, 4 *Har.* 521. Nevertheless, the facts do constitute evidence of an admission, properly receivable, that the consent originally given was not an unlimited consent, but a consent that expired at or about June 9, 1915, when the ordinance granting the twenty-year franchise was passed.

The appellants insist that the burden was cast upon the town to show that the original consent was limited, and they contend that the evidence submitted was clearly insufficient. In their brief the evidence and the inferences deducible therefrom are discussed at great length. It is argued that evidence of verbal admissions is dangerous, unsatisfactory, subject to abuse, falsification and error, and should be received with caution and scrutinized carefully. With this stricture we agree; but however unsatisfactory such evidence may be in general it may not be rejected or entirely ignored. There was, therefore, some evidence of an admission by a company officer that in June, 1915, its franchise was about to expire, and undisputed evidence that a twenty-year franchise was solicited by the company and obtained; and this evidence is corroborative of the Town's contention that its consent, as originally given, was not general and unlimited. It will serve no useful purpose further to comment upon the evidence before the Chancellor. There was some oral testimony. Naturally he was in a better position to pass upon the credibility of the testimony, and all reasonable presumptions ought to be indulged in favor of the correctness of his view of the evidence. It is sufficient to say that there was evidence upon which to base a finding of fact that the consent originally given to a predecessor of the appellant company was a limited consent, and not one in perpetuity. The Chancellor so found; and a careful review of the evidence fails to produce in our minds a conviction to a reasonable certainty that the finding of fact was plainly and indisputably unsupported by the evidence.

The inherent error of the appellants' argument, thus far, is that it rests upon the mistaken assumption that the consent as originally given was without limitation as to time. If the assumption were warranted it would follow that the franchise granted by the State was so implemented by the unlimited consent given by the town as to result

in a perpetual franchise from the State to use the public streets and highways of the town for the purposes of the utility, a franchise irrevocable and illimitable by the town alone for the reason that there is nothing in the statute which authorizes a municipality, having once perfected a franchise by granting an unlimited consent, thereafter to modify, limit or revoke it. See *City of Owensboro v. Cumberland Tel. & Telegraph Co.*, 230 *U. S.* 58, 33 *S. Ct.* 988, 57 *L. Ed.* 1389; *City of Louisville v. Cumberland Tel. & Telegraph Co.*, 224 *U. S.* 649, 32 *S. Ct.* 572, 56 *L. Ed.* 934.

It is argued that, as the predecessor of the appellant company had occupied the streets of the town for fifteen years until June, 1915, without objection, and that, as the town had made several lighting contracts with the corporations during that period, the necessary consent of the town should be inferred, or that the town should be held to be estopped to deny its consent. Again the assumption is that the factual situation is sufficient to justify the contention. Admittedly, a consent such as is contemplated by the statute may be implied. There is no language to suggest that the consent shall be evidenced by ordinance, resolution or otherwise; but the showing is not that of a company which has proceeded upon a general consent without restriction, the municipality thereafter attempting to revoke it, as was the case in *City of Louisville v. Cumberland Tel. & Telegraph Co., supra;* nor is the situation one that is envisaged in *Sec.* 1687, *McQuillen's Municipal Corporations,* cited by the appellants, where a municipality has acquiesced for years in the use of its streets by a public service company, allowing it to spend thousands of dollars in connection with such use, has received the benefits of the use, has regulated the use, and has levied licenses and granted permissions thereabout. A situation readily may be conceived where there is no evidence, documentary or oral, with respect to any specific consent given by a municipality to the use of its streets by a public utility, the fact being that,

with no municipal action at all with respect to the nature and extent of consent, a public service company has been allowed, without hindrance or molestation, to occupy the streets, spend its money, extend its facilities, deal with the municipality and be subjected to its regulations, with no warning, notice or implication that its privilege was limited in time. In such case elementary justice might well demand an inference of unlimited consent, or that the municipality be held estopped from denying such consent. Here, the evidence, deemed to be sufficient to show a limited consent, precludes, of course, an inference of an unlimited consent; nor does an estoppel arise for the appellant company and its predecessors acted with knowledge that the consent was limited in time.

It is contended that the admission of the officer of the company that its franchise was about to expire was not binding on the company as not made within the scope of his authority as a part of the *res gestae*. The officer was the secretary and general manager of a company negotiating for the sale of its business to another who demanded a twenty-year franchise from the town as a condition to the accomplishment of the sale. He conducted the negotiations for the franchise. The franchise was granted and accepted. The company could not have been ignorant of the grant, and there is nothing that suggests a lack of authority in the agent. What was said by the officer during the negotiations with respect to the nature and condition of the franchise under which his company was then operating was within the scope of his authority, a part of the *res gestae* of the transaction, and was binding on the company. Moreover, no objection on the ground suggested was offered to the testimony at the trial.

It is contended that the ordinance of June 9, 1915, was a nullity, ineffective for any purpose, and that the acceptance of the twenty-year franchise granted thereby did not constitute a waiver of the company's perpetual right to

operate its business in the town. The argument is predicated on the principle that a waiver is an intentional relinquishment of a known right, and that, to be effective, must be supported by a valuable consideration. Again, the contention is based upon the mistaken assumption that the company was possessed of a perpetual franchise effected by an unlimited consent, and was surrendering a right in perpetuity for one limited in time. If this were so, the authority cited, *Town of Golconda, et al., v. Field*, 108 *Ill.* 419, would be in point; but having a limited franchise about to expire, the company was giving up nothing. It was supplicant for an extension of its privilege, and by its acceptance of the new franchise it was bound by its terms. There has been no authority cited holding that there must be a consideration moving to the acceptor of the franchise in order to bind him by its conditions.

Finally, it is argued that since the company, from June 8, 1935, to September 8, 1936, had been allowed to occupy the streets of the town without molestation or notice that its franchise would not be renewed or extended, a new consent without limitation of time must be inferred, and, therefore, a perpetual franchise resulted from the nonaction of the town during the interval. The right to consent to the use of its streets by the company was in the town by force of the statute. It exercised its right and fixed a definite term of twenty years as the term of the consent. This term was accepted. At the expiration of the period the right of the company to occupy the streets terminated by force of the stipulation of the instrument of grant which it had accepted and under which it acted. The rights of the parties were fixed, clearly and definitely, and cannot be enlarged into a perpetual grant of consent by mere implication. See *Detroit United Ry. v. Detroit*, 229 *U. S.* 39, 33 *S. Ct.* 697, 57 *L. Ed.* 1056; and this is so whether the franchise emanates directly from the State, or from the municipality having power, under its charter,

to grant the franchise. The argument results in the impossible conclusion that as a result of mere non-action for fifteen months the town must be deemed to have consented to the use of its streets in perpetuity. The company was not misled. It knew that its franchise had expired. There is no evidence of any act or conduct on the part of the town which would reasonably lead the company to believe that its franchise would be extended or renewed either in perpetuity or for a period. True it is that, during the interval, some small expenditures were made by the company for the improvement of its system, or for the convenience of the town or its inhabitants, but whatever money was spent was with open eyes.

The decree of the Chancellor is sustained.