**ARTESIAN WATER COMPANY, a corpora-
tion of the State of Delaware, Plaintiff,**

v.

**STATE of Delaware, DEPARTMENT OF
HIGHWAYS & TRANSPORTA-
TION, Defendant.**

Superior Court of Delaware,
New Castle.

Nov. 22, 1974.

Richard J. Abrams and Stephen E. Herrmann of Richards, Layton & Finger, Wilmington, for plaintiff.

Aubrey B. Lank and Christopher S. Flanagan of Theisen, Lank & Mulford, Wilmington, for defendant.

## OPINION

BIFFERATO, Judge.

This is an action by Artesian Water Company (Artesian) against the State of Delaware, Department of Highways and Transportation (State Highway Department), seeking a declaratory judgment that Artesian is entitled to reimbursement in the amount of all water facility relocation expenses that it will necessarily incur by reason of a recently approved state highway reconstruction project involving Delaware Route 141 (Basin Road). Both parties have moved for summary judgment in their respective favor on the issue of Artesian's entitlement to compensation for the full amount of such relocation costs.

The historical and technical facts have been set out in detail by the parties in their briefs. Suffice it to say, therefore, that Artesian, a state-regulated public util-

ity corporation engaged in the business of supplying and distributing water for public use, presently operates a portion of its pipeline and related facilities in and along a public road. Artesian had originally acquired a right-of-way in this area from a private trust in 1955 and, in accordance with the terms of franchise agreements entered into between the parties in 1955 and 1956, installed a water distribution system in and along what was then the position of Basin Road and in and through its easement over the privately owned property. All such private property, as well as Artesian's easement, has since been acquired by the State of Delaware. Consequently, all of Artesian's facilities in this area are presently located on state-owned property.

Due to certain reconstruction activities involving Basin Road in 1958–1959, Artesian was required to relocate substantially all of its water line, originally installed under authority of the franchise agreements, to their present position in the bed of Basin Road. Despite the franchise agreements' cost burden provisions to the contrary, the State Highway Department reimbursed Artesian in the full amount of its relocation costs. The Department's explanation for this is that since the highway reconstruction project qualified for at least 90% federal aid, 17 Del.C. § 132(b)(5) statutorily shifted the burden of defraying such relocation costs to it.

In 1971, pursuant to a further proposed major reconstruction and relocation of Basin Road, the State Highway Department notified Artesian that it would again be required to relocate certain of its pipeline from the 1958–1959 realigned Basin Road right-of-way and to totally relocate its facilities as originally installed in and through the area of its former easement. Unlike the 1958–1959 highway project in which the Federal Government was a 90% funding participant, the proposed project was approved on a 50/50 matching basis. Therefore, finding 17 Del.C. § 132(b)(5) inapplicable, the State Highway Depart-

ment has refused Artesian's request for full relocation cost reimbursement.

Artesian's claim of entitlement to full relocation cost compensation is predicated upon alternative theories. Artesian's primary contention is that the State of Delaware is obligated by federal law to pay public utility relocation costs in all federal-aid highway projects, irrespective of the size of the federal share payable to the State. It relies on the inter-relationship of recent federal and Delaware relocation assistance statutes in proclaiming that a statutory right to compensation has emerged which derogates against the traditional common law rule that heretofore required utilities to relocate at their sole expense. Alternatively, Artesian contends that it has vested property and/or contract rights in the subject location of its water-distributing facilities and is thereby entitled to compensation for relocation expenses under the law of eminent domain.

The State Highway Department, on the other hand, contends that the common law rule is controlling; that neither federal nor Delaware statutes authorize utility relocation cost compensation in the present case; and that Artesian does not have the type of interest in the present location of its facilities for which compensation is required under eminent domain principles.

The Court preliminarily directs itself to the question of the applicability of the 1955–1956 franchise agreements to the present controversy. These agreements, if applicable, would clearly place the burden on Artesian to absorb all expenses for the relocation of its facilities from the areas over which the franchises were granted. However, due to the major realignment of Basin Road and the substantial relocation of Artesian's water-distributing facilities in 1958–1959, these agreements presently cover only 85 feet or approximately 5% of the present location of Artesian's facilities. Therefore, the terms of the 1955–1956 franchise agreements govern the disposition of the com-

pensation issue only with respect to that portion (approximately 5%) still covered by the agreements unless, of course, Artesian prevails in its argument that certain recent federal and Delaware statutes supercede these agreements entirely on the question of full relocation cost reimbursement.

I

■ In the absence of a statute or agreement to the contrary our state courts, as well as the courts of most jurisdictions, adhere to the common law rule that a utility is required to relocate at its own expense its facilities located on public highways when such relocation is necessary to facilitate highway improvements. State Highway Department v. Roberts, Del.Ch., 215 A.2d 250, 254 (1965). See also New Orleans Gas Light Company v. Drainage Commission, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1905); Port N. Y. Auth. v. Hackensack Water Co., 41 N.J. 90, 195 A.2d 1 (1963); Opinion of the Justices, 101 N.H.Supr. 527, 132 A.2d 613 (1957). See generally, 12 McQuillen, Municipal Corporations (3rd Ed.), § 34.74a; 36 Am.Jr. 2d, Franchises, § 42. The rationale underlying the rule is that since the utility acquires its right to make special or exceptional use of the public highway only by the permissive grant of the state, 12 McQuillen, supra, § 34.10, the utility's use is necessarily subordinate to the general public's principal and primary use of the highway. Sammons v. City of Beaufort, 225 S.C. 490, 83 S.E.2d 153, 157 (1954); 25 Am.Jur.2d, Highways, § 182. Hence, under the theory that what special privileges the sovereign giveth, it can, in the light of a paramount public need, taketh away, a utility always runs the risk that the public welfare may require changes in the public highways which will require relocation of its facilities and for which "a utility must always be prepared to assume and pay for." State Highway Department v. Roberts, supra, 215 A.2d at 254. See also New York Tunnel Authority v. Consolidated Edison Co., 295 N.Y. 467, 68 N.E.2d 445 (1946);

Bell Telephone Co. v. Pennsylvania Public U. Com'n, 139 Pa.Super. 529, 12 A.2d 479 (1940).

It is this well-settled common law rule that Artesian argues has been displaced by a statutory right to full relocation cost compensation. Specifically, Artesian argues that the Federal-Aid Highway Act of 1956 as amended, 23 U.S.C. § 101 et seq., and its state counterpart, 17 Del.C. § 132(b)(5), create a qualified right to utility relocation cost reimbursement which has ripened into an absolute right to full reimbursement in all federal-aid highway projects by operation of two recent statutes, the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C. § 4601 et seq., and the Delaware Uniform Relocation Assistance Act of 1972, 29 Del.C. § 9101 et seq.

■ No person would dispute the fact that the Federal-Aid Highway Act and 17 Del.C. § 132(b)(5) operate to give a utility only a qualified right to relocation cost reimbursement. The primary purpose of the Federal-Aid Highway Act is to stimulate and accelerate the construction of federal-aid highways by offering federal aid to state and local bodies which undertake construction within their boundaries. 23 U.S.C. § 101(b); D. C. Federation of Civic Ass'ns, Inc. v. Airis, 129 U.S.App. D.C. 125, 391 F.2d 478 (1968). The federal share payable ranges from 50% to 100%, depending upon the type of project engaged in by the state. 23 U.S.C. § 120. Section 123 of the Act provides that "when a state *shall* pay the cost of relocation of utility facilities" necessitated by the construction of a federal-aid project, "[f]ederal funds *may* be used to reimburse the State for such costs in the same proportion as federal funds are expended on the project." 23 U.S.C. 123. Reimbursement, however, is not appropriate under this section where the state's "payment to the utility violates the law of the State or violates a legal contract between the utility and the State." Id. Accordingly, Section

123 has been consistently construed as making federal funds available in a particular case only when a utility's costs are compensable under state law. Potomac Electric Power Co. v. Fugate, 211 Va. 745, 180 S.E.2d 657 (1971); South Carolina State Highway Department v. Parker W. & S. Subdist., 247 S.C. 137, 146 S.E.2d 160 (1966); Department of Hwys. v. Southwestern Elec. Pow. Co., 243 La. 564, 145 So.2d 312, 329 (1962).

■ Under Delaware law, the State Highway Department is obligated to reimburse a utility for relocation costs only when such costs are incurred as a result of a federal-aid project in which the federal share payable is at least 90%. 17 Del.C. § 132(b)(5); State Highway Department v. Delaware Power & Light Company, Del.Supr., 39 Del.Ch. 467, 167 A.2d 27 (1961). Since the proposed project calls for only 50% federal participation, the State Highway Department is prohibited under the statute from defraying Artesian's relocation expenses.

■ Artesian nevertheless argues that Delaware's qualified relocation reimbursement provision, 17 Del.C. § 132(b)(5), has been modified, superceded or repealed by operation of recently enacted federal and Delaware relocation assistance statutes. The federal statute, the Uniform Relocation Assistance Act of 1970 [U.R.A.], 42 U.S.C. § 4601 et seq., as did its predecessor, Chapter 5 of the Federal-Aid Highway Act, 23 U.S.C. § 501 et seq., requires that any state, as a condition to receiving federal aid, submit satisfactory assurances to the head of the appropriate federal agency (here, the Secretary of Transportation) that "fair and reasonable relocation payments and assistance" will be provided to persons displaced by a federal-aid project. 42 U.S.C. § 4630; DoT IM 80–1–71 § 7. See also 23 U.S.C. § 502 (repealed); DoT IM 80–1–68 § 7. The principal purpose of the U.R.A., as its title implies, is to establish a uniform governing rule of federal law for all federally directed and federally financed projects that cause displacement of persons and businesses. The Act was very consciously modeled on the Federal-Aid Highway Act, following "as closely as possible [its] substantive provisions," in an effort to assure that all persons uprooted by federal authority would receive the beneficial protection earlier extended by the Federal-Aid Highway Act to those situated in the path of highway construction. Triangle Improvement Council v. Ritchie, 402 U.S. 497, 499–500, 91 S.Ct. 1650, 1651, 29 L.Ed.2d 61 (1971) (Harlan, J., concurring). In fact, the only essential difference between the U.R.A. and the repealed relocation assistance provisions of the Federal-Aid Highway Act is that the latter is substantially broadened to include any federal-aid project, not simply federal-aid highway projects.

■ The Delaware Relocation Assistance Act of 1970, 17 Del.C. § 1901 et seq., was the state response to the then effective relocation assistance provisions of the Federal-Aid Highway Act. When those provisions were repealed by the U.R.A., the state response was to replace its former Act with a newer version, the Delaware Uniform Relocation Assistance Act of 1970 [Delaware U.R.A.], 29 Del.C. § 9101 et seq. The purpose of the Delaware U.R.A. was to assure maximum federal participation, and like the federal U.R.A., to create a uniform statutory procedure for rendering relocation payments and assistance to persons displaced by any federal-aid project.

■ Notwithstanding Artesian's arguments to the contrary, the Court finds that the federal and Delaware Uniform Acts do not create an absolute right in a utility to be reimbursed for the cost of relocating its facilities in order to facilitate federally assisted highway improvements. The right to such reimbursement continues to be governed by Section 123 of the Federal-Aid Highway Act and 17 Del.C. § 132(b)(5) wherein both the federal and state legis-

**438**

latures have chosen to fashion special rules with respect to utility relocation cost compensation.

No doubt, the U.R.A. brings uniformity to the previous jumble of federal statutory provisions dealing with relocation assistance. Section 220(a) of the U.R.A. lists no less than eleven acts or parts of acts that have been repealed by its provisions. Lathan v. Volpe, 455 F.2d 1111, 1123 (9th Cir.1971). The repealed relocation assistance provisions dealt not simply with federal-aid highway projects authorized by the Department of Transportation (formerly 23 U.S.C. §§ 501–512), but also with various other federal or federally assisted projects wholly unrelated or only incidentally related to highway construction and improvement. See, e. g., 43 U.S.C. §§ 1231–1234 (repealed)(land acquisitions by the Department of Interior for purposes of development); 10 U.S.C. § 2680 (repealed) (property acquisitions for public works projects by the Department of Health & Welfare); 42 U.S.C. § 1415, 7(b)(iii), 8 second sentence, § 1465 (repealed) (federally assisted slum clearance and urban renewal projects by the Department of Housing and Urban Development). The point to be made here is that the U.R.A. did not alter the prior scheme insofar as those "persons" who are entitled to benefits are concerned, but rather the procedure for and the extent of coverage to be had for those "persons" thereby qualifying under the Act. Artesian's contention that the U.R.A. expanded on the class of persons entitled to coverage to include all utilities is therefore an unwarranted interpretation of the Act. Consequently, while the U.R.A. was not intended to afford less protection or assistance to persons displaced under the Federal-Aid Highway Act, Lathan v. Volpe, supra, neither does it extend coverage to include utilities within its definition of displaced persons or businesses. Moreover, to construe the U.R.A., in absolute terms, as including utilities within its applicable provisions, would undoubtedly render nugatory Section 123 of the Federal-Aid High-

way Act. Section 123 deals specifically with the very heart of Artesian's entitlement to relocation assistance, and, pursuant to its unambiguous terms, predicates federal reimbursement of utility relocation expenses on the availability of such compensation under state law. 23 U.S.C. § 123. See Potomac Electric Power Company v. Fugate, supra; South Carolina State Highway Department v. Parker W. & S. Subdist., supra; Department of Hwys. v. Southwestern Elec. Pow. Co., supra.

■■ Nor does the Court find that the effectiveness of Section 123 is any way altered by the passage of the U.R.A. It is significant to note in this regard that while the U.R.A. directly resulted in the repeal of the relocation assistance provisions respecting displaced persons under the Federal-Aid Highway Act, Section 123 was left unchanged. Moreover, the conscious deliberation of Congress in passing the U.R.A. and in repealing only the relocation assistance provision contained in Chapter 5 of the Federal-Aid Highway Act belies the fact that Congress intended so indirect a method as an implied repeal of Section 123. Implied repeals have never been favored in this State, Mayor and Council of Wilmington v. State, Del.Supr., 5 Del. 332, 57 A.2d 70, 79 (1947), and our state courts will construe new legislation, whenever possible, as consistent with pre-existing laws. DuPont v. DuPont, Del. Supr., 7 Terry 592, 87 A.2d 394, 399 (1952); Kelley v. Mayor and Council of City of Dover, Del.Ch., 300 A.2d 31, 35 (1972).

■ Furthermore, no basis exists to support invocation of the judicial doctrine of implied repeal. Admittedly, both the U.R.A. and Section 123 deal with the same general subject of relocation assistance in federally assisted projects, but each statute is wholly reconcilable with the other. When the relocation payments and assistance provisions of Chapter 5 of the Federal-Aid Highway Act were effective, those provisions in no way impaired the operation of Section 123. Simply because per-

sons and businesses displaced as a result of a federal-aid highway project must now look to a separate and uniform statute does not alter the effectiveness of Section 123, particularly since the U.R.A. provisions are in substance virtually identical to those formerly contained in Chapter 5 of the Federal-Aid Highway Act. Moreover, the fact that the U.R.A. has more general application than did its predecessor provisions does not effectuate an implied repeal. Where one statute is broader than the other, both occupying the same field, the specific controls the general to the extent of any conflict whether enacted before or after the broader statute. Bemis Bros. Bag Co. v. Wallace, 197 Minn. 216, 266 N.W. 690 (1936); Boyd v. Huntington, 215 Cal. 473, 11 P.2d 383 (1932). Accordingly, Section 123, being the specific application, is controlling on the question of Artesian's right to relocation compensation, irrespective of the general and more liberal U.R.A. provisions.

■ Artesian overstates the legal effect of the clause "notwithstanding any other law" which appears in Section 210 of the U.R.A. and which Artesian argues indicates an intent by Congress to pre-empt or repeal Section 123 of the Federal-Aid Highway Act and 17 Del.C. § 132(b)(5). It is a well-settled rule of statutory construction, however, that such general repealing clauses are in legal contemplation a nullity. Repeals must either be expressed or result by implication, 1A Sutherland on Statutory Construction (4th ed.) § 2308, neither case of which is present here.

■ For very much these same reasons, the Court finds that the Delaware U.R.A., 29 Del.C. § 9101 et seq., does not expressly or impliedly repeal 17 Del.C. § 132(b)(5). The two statutes present no irreconcilable conflict. Moreover, the general repealing clause contained in the Delaware U.R.A. that its provisions "repeal, supercede, modify or amend" all prior inconsistent statutes is, absent a showing of inconsistency or irreconcilable conflict, in-

sufficient to effectuate a repeal. Sutherland on Statutory Construction, supra.

Accordingly, the Court finds that there exists no federal or Delaware statutory right to full utility relocation cost compensation in Federal-aid highway projects in which the Federal Government is less than a 90% funding participant.

## II

■ In the alternative, Artesian argues that, even if it does not qualify for relocation cost compensation under recent federal and Delaware relocation assistance statutes, it is nevertheless entitled to compensation under the law of eminent domain for all damages sustained by reason of the proposed reconstruction of Basin Road. Of course, a recovery under this theory presupposes the existence in Artesian of a proprietary interest in the present location of its facilities which has been "appropriated" by the State and for which compensation is compelled by state statute or by well-settled constitutional principles. See 17 Del.C. § 132(c)(4) and § 138; Delaware Constitution, Art. I, Sections 7 and 8, Del. C.Ann; U.S. Constitution, Art. I, Section 10 and Amendments V and XIV. Artesian, therefore, contends that it operates its facilities at the subject location as a franchisee, and that its franchise is a vested property or contract right which cannot be abrogated by the State without compensating Artesian to the extent of its damages. The State counters by asserting that Artesian is merely a licensee in the area and therefore can possess no compensable proprietary interest in the subject location of its facilities.

■ The Court finds that Artesian operates its facilities in the Basin Road right-of-way and in the area running contiguous therewith as a franchisee. Notwithstanding the State's arguments to the contrary, Artesian acquired a franchise from the appropriate State Agency, the Department of Highways and Transporta-

tion, in accordance with that Agency's delegated power to grant franchises to public service corporations. 17 Del.C. § 132(c)(4). Although a franchise always presupposes a grant from the sovereign, Greater Wilmington Transportation Authority v. Kline, Del.Super., 285 A.2d 819, 822 (1971); 37 C.J.S., Franchises, § 10, the grant in this case came about by virtue of the State Highway Department's participation in and acquiescence to Artesian's relocation of its facilities in the realigned Basin Road right-of-way in 1958–1959, and the State is now estopped from denying that a grant was made. 39 Am.Jur.2d, Highways, Streets and Bridges, §§ 218, 241.

■ The Court feels, however, that Artesian overstates the significance of 26 Del.C. § 1301 with respect to the nature of the franchise herein granted. Section 1301 merely gives Artesian a general but qualified right to locate its facilities beneath the public roads in order to effectuate its purpose in transporting water to a segment of the general public. Section 1301 does not, in and of itself, however, grant anything specific to Artesian; it does not categorize the nature of Artesian's right to locate its facilities in the public way, for example, in terms of a license, a franchise or an easement. Instead, the nature of the right, as well as any conditions to be placed on its exercise, are to be determined by the appropriate local unit or agency having control over the public roads and whose consent is deemed a condition precedent to the exercise of the right. Compare Delaware Power & Light Company v. City of Newark, Del.Ch., 37 Del.Ch. 259, 140 A.2d 258 (1958); Eastern Shore Public Service Co. v. Town of Seaford, Del.Ch., 22 Del.Ch. 288, 2 A.2d 258 (1938), affirmed Del.Supr., 23 Del.Ch. 199, 2 A.2d 265 (1938). Accordingly, the Court finds that Section 1301 is not an independant grant to Artesian of a franchise that is necessarily of a proprietary nature. Artesian's interest in the subject location of its facilities must instead be determined by the nature and incidents of the particular franchise herein granted.

■ As generally stated, a franchise is a special privilege conferred by the State on an individual or corporation to do that which a citizen cannot do by common right. Greater Wilmington Transportation Authority v. Kline. Unlike a mere license, a franchise is neither personal nor revocable at the mere will of the grantor, absent a reservation of such right in the original grant. Unlike an easement, however, a franchise ordinarily does not create an interest in land, even though the use of the franchise requires the occupancy of land. 36 Am.Jur.2d, Franchises, § 3. Therefore, Artesian's labeling of the grant as a franchise does not necessarily repose in it any real property rights. See City of Wilmington v. Delaware Coach Company, Del.Ch., 230 A.2d 762, 767 (1967).

Although there is some authority to the contrary, see Arkansas State Highway Commission v. Arkansas Power & Light Company, 235 Ark. 277, 359 S.W.2d 441 (1962), the prevailing view in most jurisdictions is that a franchise conferred by the State on a public utility to locate its facilities in the public way creates no compensable property interest in the subject location. See, e. g., City of Wichita v. Kansas Gas & Electric Co., 204 Ark. 546, 464 P.2d 196 (1970); State Highway Commission v. Clackmas Water District, 247 Or. 216, 428 P.2d 395 (1967); Western Union Telegraph Company v. Tarrant County, Tex.Civ.App., 450 S.W.2d 763 (1970); Consolidated Edison Company of New York v. Lindsay, 24 N.Y.2d 309, 300 N.Y.S.2d 321, 248 N.E. 2d 150 (1969). In refusing a utility's request for relocation cost compensation, these authorities and others uniformly concede that when some legitimate public need requires that a utility's franchise can no longer continue undisturbed, the disturbance, removal or relocation of facilities or structures originally constructed under authority of such a franchise is neither a "taking" in the constitutional sense nor a damaging of property. 2 Nichols on Emi-

nent Domain, § 5.85; 26 Am.Jur.2d, Eminent Domain, § 181; City of Grand Prairie v. American Tel. & Tel. Co., 405 F.2d 1144 (5th Cir. 1969).

 Moreover, one who accepts a franchise from a governmental body to construct water lines under or along a public street, road or highway, impliedly consents, as a condition for the franchise, to bear all costs in relocating its facilities when made necessary to facilitate highway improvements. County of Santa Barbara v. U. S., 269 F.Supp. 855 (C.D.Cal.1967); City of Witchita v. Kansas Gas & Electric Co., supra; Natick Gas Light v. Inhabitants of Natick, 175 Mass. 246, 56 N.E. 292 (1900); Southern California Gas Company v. City of Los Angeles, 50 Cal.2d 713, 329 P.2d 289 (1958). See also 2 Nichols on Eminent Domain, supra; 12 McQuillen on Municipal Corporations, § 34.74a. This condition is implied in the grant, itself, and its rationale rests on the indisputable notion that the permissive right of a utility to lay its pipes in the public way is subordinate to the paramount right of the general public to improve its streets, roads and highways. Consequently, the requirement that a utility remove or relocate its facilities from a highway construction site does not impair a utility's contractual rights under a franchise. Department of Hwys. v. Southwestern Elec. Pow. Co., supra, 145 So.2d at 326.

Here, Artesian's franchise merely permits it to use, not own, the land where its water line and facilities are presently located. All such land is presently and exclusively owned by the State. Although Artesian previously owned a private easement through a portion of this area, the State's subsequent purchase of that easement extinguished Artesian's interest in the real property. Unlike a situation where a corporation acquires a location in private land by purchase, Artesian acquired its location in a public road by permission of the State. As such, Artesian acquired no vested real property interest in the location and, consequently, it is not entitled to compensation under the law of eminent domain for any losses or expenses it may sustain in the removal and relocation of facilities therein located. City of Wichita v. Kansas Gas & Electric Company, supra; State Highway Commission v. Clackmas Water District, supra.

Artesian's motion for summary judgment is denied. The motion of the State Highway Department for summary judgment is granted.

It is so ordered.