PORTO RICO IRON WORKS, INC., demandante y apelada, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 8710.—*Sometido:* Julio 8, 1943. *Resuelto:* Enero 25, 1944.

*Hon. Procurador General Interino M. Rodríguez Ramos, A. E. Franco Cabrero, Procurador Auxiliar, y Carmen B. Hernández, Oficial Jurídico,* abogados del apelante; *Raúl Matos,* abogado de la apelada.

EL JUEZ PRESIDENTE INTERINO SEÑOR TRAVIESO emitió la opinión del tribunal.

La demanda interpuesta en este caso contiene siete causas de acción y el total reclamado asciende a la cantidad de $13,670.97, importe de contribuciones pagadas bajo protesta por la demandante. El demandado interpuso excepción previa de falta de hechos constitutivos de causa de acción. Declarada ésta sin lugar, la corte de distrito, a solicitud del demandado, dictó sentencia declarando con lugar la demanda en todas sus causas de acción y condenando al demandado al pago de la suma total reclamada más intereses al 6 por ciento sobre dicha cantidad desde la fecha de la interposición de la demanda, más las costas.

Contra dicha sentencia se ha interpuesto el presente recurso.

1. En la primera causa de acción la demandante, Porto Rico Iron Works, Inc., reclama la devolución de $1,842.86 pagados bajo protesta por concepto de arbitrios sobre efectos introducidos en Puerto Rico de Estados Unidos, por el fundamento de que los mismos no están sujetos al pago de dicho arbitrio por la Ley de Rentas Internas de Puerto Rico. Los efectos en cuestión son ciertos "semi-trailers" y partes de "road grader".

Según se describen en la demanda, "un 'road grader' es un equipo para la construcción de carreteras, consistente de una pala operada en cuanto a sus movimientos verticales por un pistón que forma parte del mismo, siendo dicha pala movida por un tractor" y "un 'semi-trailer' es una plataforma con ruedas de aire construídas (sic) para ser remolcadas por *trucks*, careciendo las mismas de motor u otros medios de auto-impulsión, siendo diseñadas de tal manera que en forma alguna puede convertírseles en vehículos de auto-impulsión, pudiendo moverse únicamente utilizando la fuerza de tracción."

Indudablemente, que de la demanda no aparece que los mismos sean vehículos de auto-impulsión.

El arbitrio se impuso a base de lo dispuesto por los incisos 7 y 8 de la sección 16 de la Ley núm. 85 de 20 de agosto de 1925, según ha quedado posteriormente enmendada. Dicha ley es conocida como la Ley de Rentas Internas de Puerto Rico. Los incisos en cuestión, en lo que es pertinente, leen como sigue (Ley núm. 158 de 13 de mayo de 1941, pág. 949):

"7. Vehículos y aparatos de auto-impulsión. Sobre automóviles, motocicletas, locomotoras, tractores, y otros vehículos de propia impulsión de naturaleza semejante, (sea cual fuere el nombre con que se conocieren), incluyendo chasis, motores, cuerpos de autos sin motor, tanques, baterías, motores para los mismos, y sobre toda parte o accesorio para cualquiera de los artículos aquí enumerados, excluyendo neumáticos, tubos interiores y gomas sólidas, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de doce y medio (12½) por ciento sobre el precio de venta en Puerto Rico; *Disponiéndose,* etc."

"8. Otros vehículos y aparatos de auto-impulsión. Sobre auto vagones, camiones, y autos de arrastre y otros vehículos similares de auto-impulsión (sea cual fuere el nombre con que se conocieren), incluyendo chasis, motores, cuerpos de camiones, auto vagones, y autos de arrastre sin motor, tanques, baterías, motores para los mismos, y sobre toda parte o accesorio para cualquiera de los artículos aquí enumerados, excluyendo neumáticos, tubos interiores y gomas sólidas, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de doce y medio (12½) por ciento sobre el precio de venta en Puerto Rico."

La corte inferior, interpretando esta parte de la citada ley, dijo en su opinión:

"Basta leer los incisos para determinar que, según anuncia el título de cada uno de ellos, se limitan a gravar vehículos y aparatos de auto-impulsión, y las partes y accesorios de los mismos. Si bien mencionan 'cuerpos de autos sin motor' y 'cuerpos de autos de arrastre sin motor' ello se refiere a los cuerpos de vehículos de auto-impulsión que sólo carecen del motor que, al incorporárseles, ha de completar el vehículo. Se grava el vehículo de auto-impulsión, y se gravan todos los componentes del mismo que se introduzcan separadamente. Así se menciona expresamente, por un lado, el cuerpo del vehículo sin motor, y a renglón seguido, el motor en sí. En el in-

ciso 8, que es el que realmente considera aplicable el demandado, la frase 'autos de arrastre sin motor' está modificada por la palabra 'cuerpos' y la frase anterior que dice 'otros vehículos similares de auto-impulsión.' El arbitrio se impone sobre 'auto vagones, camiones, y autos de arrastre y otros vehículos de auto impulsión . . . . incluyendo chasis, motores, cuerpos de camiones, auto vagones, y autos da arrastre sin motor, tanques, baterías, motores para los mismos y sobre toda parte o accesorio para cualesquiera de los artículos aquí enumerados . . . '

"'Nótese que la sección 8, que originalmente hablaba de vehículos de motor, lanchas, etc., fué expresamente enmendada en el sentido de definir claramente que se refiere a vehículos de auto impulsión, concepto que no se expuso en forma expresa en la fraseología original de dicha sección.

"Entendemos que la primera causa de acción de la demanda expone hechos suficientes para justificar la devolución de las contribuciones a que se refiere.''

Aceptamos como sano y convincente el criterio de la corte inferior. Indudablemente que los artículos sobre los cuales se impuso el arbitrio no son los vehículos de auto-impulsión a que se refieren los incisos 7 y 8 de la citada Ley de Rentas Internas, y no estando comprendidos dentro de la clasificación hecha por el legislador, no están los mismos sujetos a tributación.

Alega el apelante que estos aparatos no están incluídos como aparatos de auto impulsión y sí como cuerpos de auto sin motor. No compartimos este criterio. Los cuerpos de auto sin motor, no son otra cosa que parte de un vehículo de auto impulsión al que solamente falta colocarle el motor para que se convierta en vehículo de auto impulsión, lo cual no acontece con los aparatos objeto de la primera causa de acción. Dichos aparatos no pueden ser nunca vehículos de auto impulsión por carecer de motor y sitio donde colocársele. Se mueven únicamente cuando son arrastrados por un vehículo de auto impulsión.

Nos llama la atención la apelada hacia el hecho de que la Legislatura, por Ley núm. 116 de 12 de mayo de 1943

(Leyes de 1943, Sesión Ordinaria, página 335) adicionó por su sección 2 un nuevo inciso 8 (*a*) a la sección 16 de la Ley de Rentas Internas. Dicha sección 2 provee lo siguiente:

"Sección 2.—Para agregar un nuevo inciso que llevará el núm. 8(*a*) a la sección 16 de la Ley núm. 85, aprobada en agosto 20 de 1925, según ha sido enmendada posteriormente de manera que lea como sigue: '8(*a*). *Vehículos que no sean de Auto-Impulsión.*—Sobre todo vehículo que no sea de auto impulsión, y sobre toda parte o accesorios para los mismos, a excepción de aquellos vehículos que sean hechos expresamente para ser arrastrados mediante la fuerza humana o animal, que se venda, traspase, fabrique, use, consuma o introduzca en Puerto Rico, un impuesto de veinte (20) por ciento sobre el precio de venta de dicho vehículo en Puerto Rico.' "

La nueva ley es de carácter prospectivo, y habiendo sido aprobada con posterioridad a la ocurrencia de los hechos de la primera causa de acción, no es de aplicación a los mismos.

■ 2–3. Los hechos en que se basan la segunda y tercera causas de acción son como sigue:

La demandante celebró un contrato con la Autoridad de Hogares de Puerto Rico para la construcción de un caserío en Fajardo a un costo total de $286,521.79, incluyendo materiales y mano de obra; y otro contrato con la Autoridad de Hogares de Ponce, para la construcción de otro caserío a un costo total de $201,900. El Tesorero, de acuerdo con el inciso 4 de la sección 16 de la citada Ley de Rentas Internas, exigió a la demandante el pago del impuesto de 2 por ciento del importe de cada uno de dichos contratos. La demandante pagó bajo protesta $5,730.44 sobre el primer contrato y $4,038 sobre el segundo, no obstante haber pagado ya $1,932.64 por el 2 por ciento sobre materiales incorporados a la primera obra y $1,279.88 por materiales invertidos en la segunda.

La corte inferior declaró con lugar ambas causas de acción y ordenó la devolución de las sumas cobradas.

La resolución de que los contratos para la construcción de ambos caseríos están exentos del pago del arbitrio de 2

por ciento del costo de la obra se basó en que, a juicio de la corte sentenciadora, los artículos 8(h), 9 y 22 de la Ley núm. 126 aprobada en mayo 6 de 1938 (pág. 263) conceden tal exención. Los citados artículos, en lo pertinente, leen así:

"Artículo 8.

"(h) . . . Ninguna disposición de ley respecto a la adquisición, administración o enajenación de bienes por otras entidades públicas se aplicará a ninguna autoridad a menos que la Asamblea Legislativa lo disponga así de un modo específico.

"Artículo 9.—Por la presente se declara que constituye la política de Puerto Rico el que cada Autoridad manejará y administrará sus proyectos de casas de un modo eficiente que le permita fijar los alquileres de las viviendas en los tipos más bajos posibles, compatible. con su misión de proporcionar viviendas decentes, seguras e higiénicas y que ninguna autoridad construirá o administrará ninguno de dichos proyectos con fines lucrativos o como fuentes de rentas para el Gobierno de Puerto Rico o para ningún municipio. . . . . .

"Artículo 22.—Por la presente se declara que la propiedad de cualquier autoridad es propiedad pública de utilidad pública que se usa para fines esenciales públicos y gubernamentales y que dichas propiedad y autoridad estarán exentos de toda clase de contribuciones y de tasaciones especiales del Gobierno de Puerto Rico, sus municipios y demás subdivisiones; . . . "

El inciso cuarto de la subdivisión "Otros Arbitrios" de la sección 16 de la Ley de Rentas Internas, Ley núm. 85 de 20 de agosto de 1925, según fué enmendada por la Ley núm. 158 de 13 de mayo de 1941, página 949, dispone lo siguiente:

"4. *Contratos.*—Toda persona que obtenga contratos para el suministro de cualquier material, equipo, herramienta o maquinaria o para la ejecución de cualquier obra celebrada con un departamento del Gobierno Insular o municipal o cualquier organismo que dependa del Gobierno Insular o Municipal o con cualquier organismo, junta o comisión creados por las leyes de Puerto Rico, o con cualquier funcionario o empleado en el servicio del Gobierno Insular o Municipal, o ante cualquier funcionario o miembro de un organismo, junta o comisión, creados por las leyes de Puerto Rico, deberá pagar, en concepto de arbitrios, el dos (2) por ciento del montante del contrato; *Disponiéndose,* que si durante la ejecución de este contrato el mon-

tante del mismo es aumentado, el contratista ·o· abastecedor deberá, asimismo, pagar un impuesto adicional equivalente al dos (2) por ciento del aumento obtenido.''

Por la primera de estas leyes, como se ha visto, se exime a las Autoridades de Hogares de Puerto Rico así como a la propiedad de las mismas de toda clase de contribuciones, mientras que por la segunda se impone a ''toda persona que obtenga contratos para el suministro de'' materiales, etc., o la ejecución de cualquier obra del Gobierno Insular o Municipal o sus agencias, funcionarios, etc., una contribución del 2 por ciento del montante del contrato.

Sostiene la apelada que la imposición de tal contribución es ilegal por estar los contratos con las Autoridades de Hogares de Puerto Rico exentos del pago de tal contribución a virtud de las disposiciones de la citada Ley de Autoridades sobre Hogares.

La corte inferior opinó que ''considerada la letra y el espíritu de la Ley núm. 126, los contratos de las obras construídas para las Autoridades de Hogares de Puerto Rico están exentos de arbitrio, por constituir el arbitrio una de las disposiciones de ley respecto a adquisición de bienes por entidades públicas a que se refiere la sección 8 ($h$) de la Ley núm. 126''.

En contra de este razonamiento arguye el demandado apelante que, ''a pesar de la aprobación de la Ley núm. 126 de 6 de mayo de 1938, ésta no exentúa al contratista, o sea, la demandante apelada del pago del 2 por ciento del montante del contrato fijado por la Ley de Arbitrios vigente, . . .'' o, en otras palabras, que el impuesto es uno sobre el contrato y no sobre la obra en sí.

La única cuestión en controversia es si el impuesto mencionado es uno que recae sobre el contratista en sí, o sobre la Autoridad de Hogares.

Es cierto que la Ley núm. 126 (supra) expresa la intención legislativa de colocar a las Autoridades de Hogares en

un plano privilegiado, como dijo la corte inferior, pero no creemos que fuera la intención legislativa colocar a los que con ellos contratan en una posición distinta a las de otros contratistas que realizan obras para el Gobierno. Sostiene la corte inferior que "aún cuando el arbitrio . . . . lo debe pagar el contratista, la existencia de ese arbitrio inevitablemente aumenta el coste de la obra, e inevitablemente ese aumento en el coste se refleja en el coste que tiene que pagar la otra parte. El estatuto que impone el arbitrio viene por lo tanto a ser una ley que afecta la adquisición de obras públicas por entidades públicas. Y la eliminación del arbitrio en cuanto a obras de las Autoridades de Hogares, abarata el coste de las obras y es uno de los factores que tienden a permitir a las autoridades el establecer tipos bajos de arrendamiento."

No estamos conformes con la opinión de la corte inferior. Es cierto que los arbitrios pertenecen a la clase de contribuciones indirectas, es decir, aquéllas en que el peso de la tributación puede traspasarse a otro, pero esto no quiere decir que, necesariamente, todas las veces ocurra así.

La presente es sin duda alguna una contribución impuesta al contratista. No es ni en su forma ni en su fondo una contribución impuesta a la Autoridad de Hogares, ni es pagada por ésta de sus fondos. La misma se calcula a base del montante del contrato y constituye una carga para el contratista que éste puede o no traspasar a la Autoridad, pero no podemos decir que se esté imponiendo a ésta una carga económica tan tangible que justifique a la corte declarar que se está imponiendo la contribución a la Autoridad de Hogares o que la misma afecte la adquisición de obras por dicha entidad.

En el caso de *James* v. *Dravo Contracting Co.* (1937) 302 U.S. 134, 159, 160, se trataba de una contribución de 2 por ciento sobre los ingresos brutos recibidos por contratistas

dentro del estado de West Virginia. La Corte Suprema de Estados Unidos sostuvo la validez del impuesto, diciendo:

"La contención descansa finalmente sobre el punto de que el impuesto aumenta el costo para el Gobierno de los servicios prestados por el contribuyente. Pero eso no es necesariamente así. El contratista, tomando en consideración la competencia que existe en el mercado para tales servicios, puede ser que esté dispuesto a sobrellevar la contribución y a absorberla en sus beneficios estimados antes que perder el contrato . . .

"Pero si asumiéramos que la contribución sobre los ingresos brutos puede aumentar el costo de la obra para el Gobierno, ese hecho no invalidaría la contribución. Con respecto a ese efecto, una contribución sobre los ingresos brutos del contratista no diferiría de una contribución sobre la propiedad y equipo del contratista necesariamente usados para la ejecución de la obra. No hay duda de que tal contribución puede ser válidamente impuesta. Contribuciones sobre la propiedad, como en este caso, son naturalmente tenidas en cuenta como parte de los gastos para la ejecución de una obra. Contribuciones pueden ser válidamente impuestas no solamente sobre la maquinaria del contratista si que también sobre el combustible utilizado en su funcionamiento."

La corte inferior opinó que el caso de *Alabama* v. *King & Boozer* (1941) 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, en que se apoya el Tesorero apelante, no es de aplicación al de autos por no tratarse en dicho caso de legislación existente que expresara la intención legislativa de colocar al Gobierno Federal en una posición superior a la de los demás compradores de mercancías. Porque diferimos de esa opinión y creemos que la doctrina envuelta es de aplicación al caso de autos, haremos un breve análisis de dicho caso.

King & Boozer, una sociedad, vendieron una madera a unos contratistas a base de costo más un beneficio fijo para los contratistas. La madera era para ser usada en la construcción de un campamento militar para los Estados Unidos. El Estado de Alabama le impuso una contribución que se le cobraba al vendedor, pero que éste estaba requerido por ley

a añadírsela al precio de venta de los materiales, de manera que éste se la cobraba al comprador, a su vez.

King & Boozer alegaban que en este caso específico el impuesto no podía ser cobrado por cuanto el mismo recaía sobre Estados Unidos violando así la Constitución.

La Corte Suprema de Alabama resolvió que aún cuando el impuesto se recobraba de los contratistas por el vendedor de los materiales, dichos contratistas estaban tan íntimamente relacionados, por su contrato, con el Gobierno y estaban de tal modo actuando por el Gobierno, que éste venía a ser el comprador de la madera, resultando en la imposición de la contribución a una transacción por medio de la cual los Estados Unidos venía a adquirir las cosas necesarias para llevar a cabo una función gubernamental, lo cual era una infracción a la inmunidad constitucional.

La Corte Suprema Nacional revocó la opinión de la Corte de Alabama. De la opinión vamos a extractar aquella parte que consideramos de aplicación al caso de autos:

"El Gobierno, a nuestro juicio con mucha razón, renuncia a la contención de que la Constitución, sin ayuda de legislación por el Congreso, prohibe la imposición de una contribución a los contratistas simplemente porque la misma ha de ser incluída económicamente, por los términos del contrato o en cualquiera otra forma, como parte del costo de construcción para el Gobierno. Hasta donde esa contribución uniforme impuesta por el estado a los contratistas entra en el costo de construcción para el Gobierno, eso no es más que un incidente normal de la organización dentro del mismo territorio de dos soberanías indepedientes con facultad para imponer contribuciones. El alegado derecho de una a estar libre de imposición de contribuciones por la otra, no significa que exista inmunidad de pago del costo adicional atribuíble a la contribución impuesta a aquellos que suministran materiales al Gobierno y a quienes no se les ha concedido inmunidad alguna. (Citas.)

"...

"Creemos, y así lo sostuvo la Corte Suprema de Alabama, que el efecto legal de la transacción que hemos detallado fué el de obligar a los contratistas a pagar la madera. Esta fué vendida y entregada

por orden de los contratistas, quienes estipularon que el Gobierno no estaría obligado a pagarla. En efecto, fué pagada por los contratistas, quienes fueron reembolsados por el Gobierno de acuerdo con su contrato. Los contratistas fueron, pues, los compradores de la madera, y como tales obligados al pago de la contribución. No estaban exentos de la obligación de pagarla, ni porque los contratistas, en un sentido amplio y general, estuvieran actuando para el Gobierno al comprar la madera, ni tampoco como parece haber pensado la Corte Suprema de Alabama, porque el peso económico de la contribución impuesta al comprador sería pasado al Gobierno por virtud de su obligación contractual de reembolsar a los contratistas.

"...

"Nosotros no podemos decir que los contratistas no estuvieran o que el Gobierno estuviera obligado a pagar el precio de compra, o que los contratistas no eran los compradores a quienes el estatuto impone la contribución. La circunstancia adicional de que ellos estaban obligados por su contrato a suministrar los materiales comprados, al Gobierno, con derecho a que éste les reembolse el costo de los mismos, incluyendo la contribución, no puede resultar en una infracción de la inmunidad del Gobierno mayor que la de la contribución sobre los ingresos brutos de los contratistas en *James* v. *Dravo Contracting Co.,* supra; . . .".

La contribución envuelta en la segunda y tercera causas de acción es una contribución global de "el dos (2) por ciento del montante del contrato." Sabemos que el costo total para la Autoridad de Hogares de Puerto Rico por la construcción del Caserío de Fajardo fué $286,521.79, y que el costo del Caserío de Ponce fué $201,900. Sabemos también el importe de las contribuciones pagadas por el contratista en uno y otro caso. En la demanda se alega que en el costo de ambas obras están incluídos materiales y mano de obra, pero no encontramos alegación alguna en cuanto a si el contratista pasó el importe de las contribuciones a las respectivas autoridades gubernamentales, o si absorbió esas sumas en su estimado de beneficios.

La situación que se nos presenta es, pues, la de un contratista que se comprometió a ejecutar una obra por una suma global, en la que iban incluídos materiales y mano de obra y

beneficios. El contratista pagó la contribución de "2 por ciento sobre el montante del contrato", y reclama la devolución de las sumas pagadas invocando la exención que el artículo 22 de la Ley núm. 126, de mayo 6 de 1938, concede a las propiedades de cualquier autoridad, usadas para fines esenciales públicos y gubernamentales.

Aplicando la jurisprudencia federal que hemos examinado a los hechos de estas dos causas de acción, nos vemos obligados a resolver que la corte inferior erró al declarar sin lugar la excepción previa en cuanto a la segunda y tercera causas de acción y al dictar sentencia a favor del demandante por las sumas de $5,730.44 y $4,038, respectivamente reclamadas.

Nos toca ahora considerar y resolver si la demandante tiene derecho a que se le devuelvan las sumas de $1,842.86 y $1,932.64, que alega haber pagado como arbitrios sobre materiales comprados e incorporados a las dos obras, por tratarse de una doble tributación.

En el caso de *Pueblo* v. *Dávila,* 47 D.P.R. 357, una ordenanza municipal imponía un derecho de $5 por la licencia de abastecedor de carne, y también un arbitrio de un centavo por cada libra de carne sacrificada. Se resolvió que la ordenanza era válida y no infringía el precepto constitucional que prohibe la doble tributación, porque para que ésta exista "ambas contribuciones deben ser de la misma naturaleza y recaer sobre una misma cosa", lo que no ocurría en dicho caso.

En *West India Oil Co.* v. *Domenech, Tes.,* 49 D.P.R. 801, 807, el Gobierno de Puerto Rico, después de una subasta pública, celebró un contrato con la West India Oil Company para la compra de cierta cantidad de asfalto. La compañía vendedora pagó el arbitrio de 1 por ciento sobre el precio total del asfalto entregado, el cual le fué impuesto de acuerdo con la sección 16, subdiv. 5, de la Ley núm. 85 de 1925, enmendada por la núm. 17 de 1927 (pág. 459), la cual autoriza la imposición de dicho arbitrio a toda persona que obtenga un

contrato para suministro de materiales al Gobierno Insular o a una de sus dependencias. Después de pagado dicho arbitrio, el Tesorero exigió a la compañía vendedora el pago del arbitrio de 2 por ciento sobre el precio de venta del asfalto entregado al Gobierno. La compañía pagó bajo protesta y reclamó la devolución de la suma pagada, alegando que se trataba de una doble tributación.

En la opinión emitida en dicho caso, copiamos de una nota en 60 L.R.A. 366, lo siguiente:

"En los casos en que se alega la doble contribución se presenta siempre la cuestión preliminar: ¿es la contribución que se disputa realmente doble? Desde luego, si no lo es; si recae sobre diferentes materias, aunque sea uno mismo el contribuyente que deba pagarla; o, si recae sobre diferentes contribuyentes, aun cuando grave la misma propiedad; o si fuere impuesta por distintos gobiernos, entonces no viola la regla constitucional de igualdad y uniformidad de la tributación . . .

"La contribución no es doble a menos que recaiga sobre la misma propiedad y dentro de una misma jurisdicción."

Véase *Monllor & Boscio, Sucrs.,* v. *Sancho Bonet, Tes.,* 61 D.P.R. 67.

Y aplicando la regla transcrita a los hechos del caso, resolvimos que se trataba en verdad de una doble tributación, pues las dos contribuciones recaían sobre el mismo objeto, el precio o valor del asfalto vendido al Gobierno; debían ser pagadas por el mismo contribuyente, la West India Oil Co.; y eran impuestas por uno solo y no por distintos gobiernos. Véase también *Casal* v. *Sancho Bonet, Tes.,* 53 D.P.R. 407.

Es fácil distinguir el presente caso de los de la *West India Oil Co.* y *Casal,* que acabamos de citar. En estos se trataba de contratos para suministrar o vender materiales al Gobierno. Y fué a esas ventas de materiales que se impusieron las dos tributaciones, la de 1 por ciento sobre el montante del contrato de venta de materiales y la de 2 por ciento sobre la venta de los mismos materiales como artículos objeto de comercio.

Se trata, pues, de dos contribuciones claramente distintas. Una sobre el montante del contrato para ejecución de la obra, incluyendo materiales, mano de obra y beneficios; y la otra sobre los materiales utilizados en la ejecución de la obra. Es decir, una sobre los materiales, la otra sobre el montante de la obra terminada. Las contribuciones, o arbitrios, no recaen, por tanto, sobre la misma cosa.

4 y 5. La cuarta y quinta causas de acción se refieren a arbitrios impuestos sobre materiales utilizados en la construcción de obras ejecutadas a base de contratos con dos municipios. La demandante pagó el arbitrio o contribución de 2 por ciento sobre el montante total de cada uno de dichos contratos con los municipios y luego pagó bajo protesta el arbitrio sobre los materiales utilizados en la obra.

Ambas causas de acción se basan en que el Tesorero carece de autoridad legal para imponer una doble contribución, o sea contribución sobre el montante de dichos contratos y arbitrios sobre los materiales utilizados en la ejecución de las obras objeto de los mencionados contratos.

El razonamiento empleado en la resolución de la cuestión de doble tributación levantada por las causas de acción segunda y tercera es de aplicación a la resolución de estas dos causas de acción. La corte inferior erró al desestimar la excepción previa y al no declararlas sin lugar.

6. La sexta causa de acción expone, en síntesis, que la corporación demandante celebró un contrato con el Negociado de Materiales, Imprenta y Transporte del Gobierno Insular para el suministro de materiales que se relacionan en la demanda. Sobre el montante de dicho contrato se impuso por el Tesorero demandado y se satisfizo por la apelada un impuesto de 2 por ciento; además el Tesorero impuso a la demandante y apelada arbitrios por la introducción de dichos efectos y mercancías que fueron pagadas bajo protesta.

Alegó la Porto Rico Iron Works, Inc., que en este caso se trata también de una doble contribución, para lo cual carece de autoridad legal el Tesorero.

Convenimos con la apelada en que en este caso específico se trata de una doble tributación. El contrato celebrado con el Negociado de Materiales, Imprenta y Transporte para el suministro de materiales por la Porto Rico Iron Works es uno de compraventa de materiales, de manera que el arbitrio de 2 por ciento impuesto sobre el montante de dicho contrato es uno impuesto sobre dicha venta de materiales. El Tesorero no tenía derecho a exigir el pago del otro arbitrio por la introducción de esos mismos materiales suministrados al Gobierno, pues eso equivalía a imponer una doble tributación sobre la misma propiedad. Los casos de *West India Oil Co.* v. *Domenech,* supra; *Casal* v. *Sancho Bonet,* 53 D.P.R. 407, y *Rossi* v. *Sancho Bonet,* 53 D.P.R. 491, son de aplicación y procede la devolución de la contribución pagada bajo protesta, en este caso específico.

7. La séptima causa de acción expone que la corporación demandante, Porto Rico Iron Works, Inc., introdujo en Puerto Rico efectos y mercancías que fueron vendidos y traspasados a Estados Unidos directamente o a través de sus agencias o instrumentalidades excepto algunos que fueron vendidos o traspasados por la demandante a McCloskey & Co. para ser usados en contratos que dicha compañía tiene con Estados Unidos de América a base de costo más honorarios fijos (*cost plus fixed fee contracts*), a pesar de lo cual el demandado, sin causa justificada, impuso a la demandante arbitrios por la introducción de dichos efectos y mercancías, los cuales fueron pagados bajo protesta por la apelada que considera que dichos arbitrios son ilegales e improcedentes. La suma reclamada asciende a $760.91.

Alega la corporación apelada que dichos efectos o mercancías han estado siempre exentos del pago de contribuciones o arbitrios por la Ley de Rentas Internas por razón de haber sido los mismos introducidos en Puerto Rico para ser vendidos y traspasados a Estados Unidos, sus agencias o instrumentalidades. Y que además los mismos están expresamente

exentos de tributación por la Ley núm. 158, de 13 de mayo de 1941, pág. 949, sección 2. Dicha sección lee como sigue:

"Sección 2.—Existiendo una emergencia con respecto a las obras de Defensa Nacional en Puerto Rico, se dispone que, a partir de la vigencia de esta Ley y durante el término de un año, todo artículo, efecto o mercancía fabricada o introducida en Puerto Rico, que se venda o traspase a los Estados Unidos de América, sus agencias e instrumentalidades, incluyendo contratistas a base de costo más honorarios fijos (*cost plus fixed fee contractors*) para su empleo en obras del Gobierno de los Estados Unidos, queda por la presente exenta del pago de cualquier contribución por concepto de arbitrios que se haya impuesto bajo las disposiciones de cualquier ley vigente en Puerto Rico; *Disponiéndose,* que el Tesorero de Puerto Rico queda por la presente facultado para devolver, y se le ordena que devuelva, cualquier arbitrio que después del 7 de abril de 1941 se haya pagado al Tesoro Insular sobre cualquier artículo, efecto o mercancía vendida o traspasada a los Estados Unidos de América, sus agencias e instrumentalidades, incluyendo contratistas a base de costo más honorarios fijos (*cost plus fixed fee contractors*), y que haya sido empleada en alguna obra del Gobierno de los Estados Unidos."

Como se ve, esta sección de la Ley núm. 158 de 1941, demuestra la intención expresa de nuestra Legislatura de eximir del pago de tributación, durante un año, a todos aquellos artículos, efectos o mercancías fabricados o introducidos en Puerto Rico que se vendieran o traspasaren a los Estados Unidos, sus agencias e instrumentalidades, incluyendo contratistas a base de costo más honorarios fijos, para su empleo en obras del Gobierno de Estados Unidos. Indudablemente las mercancías y efectos introducidos por la demandante enumeradas en la séptima causa de acción de la demanda caen de lleno dentro de la exención establecida por dicho estatuto.

Creemos de toda aplicación la parte de la opinión de la corte inferior relativa a esta cuestión, que en su parte pertinente lee así:

"El único fundamento de excepción expuesto por el demandado en cuanto a la séptima causa de acción es que no se alega que, al introducir los materiales, cumpliera la demandante con un alegado

reglamento que se dice promulgó el Tesorero de Puerto Rico el 25 de marzo de 1942. No se nos ha mostrado ni el reglamento ni la autoridad del Tesorero para promulgarlo. Llama la atención el hecho de que se promulgara casi un año después de regir la sección 2 de la Ley núm. 158, y cuando estaba próximo a expirar el año de vigencia que habría de tener dicha sección. Si la demandante introdujo y vendió mercancía antes de promulgarse el reglamento, difícilmente pudo cumplir con sus disposiciones. Por otra parte el reglamento no puede estar en conflicto con la ley, y la ley concede la exención que reclama la demandante, asumiendo que sean ciertos los hechos que alega en su séptima causa de acción. También expone hechos suficientes esta última causa de acción." (T. de A., págs. 32 y 33.)

Creemos con la corte inferior que procede la séptima causa de acción.

*Por las razones expuestas, debe modificarse la sentencia recurrida en cuanto declara con lugar la segunda, la tercera, la cuarta y la quinta causas de acción, todas y cada una de las cuales deben ser y son declaradas sin lugar, y así modificada, se confirma en cuanto declara con lugar la primera, la sexta y la séptima causas de acción.*

El Juez Asociado Sr. Snyder no intervino.