TECON CORPORATION, demandante, recurrida y recurrente, *v.* SECRETARIO DE HACIENDA, demandado, recurrente y recurrido.

*Número:* 12287   *Resuelto:* 27 de diciembre de 1961

---

*J. E. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar y Carlos G. Látimer, Procurador Auxiliar,* abogados del demandado y recurrente; *James R. Beverley y Carmen B. Hernández,* abogados de la demandante y recurrida.

Sala integrada por el Juez Asociado señor Pérez Pimentel como Presidente de Sala, y los Jueces Asociados señores Santana Becerra y Rigau.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Durante los años 1952 y 1953, la Tecon Corporation introdujo en Puerto Rico, maquinaria, herramientas, casas movibles (*house trailers*) y equipos y partes y accesorios para los mismos para ser utilizados en las obras que llevaba a cabo en la Base Aérea de Ramey en Aguadilla. Luego de pagar la suma de $37,345.38 en concepto de arbitrios, solicitó su reintegro del Secretario de Hacienda,[1] habiéndosele concedido únicamente el reintegro de $526.63.

---

[1] La contribuyente fundó su reclamación de reintegro en que (1) los arbitrios cobrados eran un tributo sobre importación, prohibido por ley; (2) la imposición de la contribución fue exclusivamente sobre la introducción de los artículos y artefactos, no habiéndose tomado el uso de dicho equipo como base para la imposición de arbitrios; (3) las leyes contributivas de Puerto Rico no rigen en el área federal de la base Ramey, a la cual no se aplica la Ley Pública 819 (Congreso No. 76, octubre 9, 1940, H.R. 6887); (4) la maquinaria y equipo de la planta industrial de caliche estaba exenta de contribuciones; (5) los compresores movidos por fuerza no eléctrica o de gas fluido, no tributaban; las herramientas neumáticas (*paving breakers*) no están gravados por la Ley de Arbitrios, y (6) las casas movibles (*house trailers*) tampoco están gravados por dicha Ley de Arbitrios.

Acudió la contribuyente ante el Tribunal Superior y luego de celebrarse un juicio en los méritos dicho tribunal dictó sentencia declarando con lugar la demanda en lo que respecta a los compresores movidos por aceite *diesel* y en lo que respecta a las casas movibles, y desestimándola en cuanto a los demás extremos.

El Secretario de Hacienda interpuso el presente recurso contra aquella parte de la sentencia que declara con lugar la demanda en los dos extremos arriba apuntados.

Sostiene, en primer término, que el Tribunal Superior cometió error al resolver que las casas movibles no tributaban bajo la Sección 8(a) de la antigua Ley de Rentas Internas (13 L.P.R.A., sec. 1040), según enmendada hasta la fecha en que se produjo la introducción en Puerto Rico de las casas movibles.

Bajo la ley original de Rentas Internas (Ley Núm. 85 de 20 de mayo de 1925, según enmendada) no tributaban los vehículos que no eran de autoimpulsión. A pesar de que los incisos 7 y 8 de la Sección 16 de dicha ley mencionaban como tributables a los "cuerpos de autos sin motor" y "cuerpos de autos de arrastre sin motor", resolvimos que ciertos *semitrailers* no tributaban. *P. R. Iron Works* v. *Buscaglia, Tes.*, 62 D.P.R. 868; *Compañía de Ferrocarriles* v. *Buscaglia, Tes.*, 63 D.P.R. 51.

Por la Ley Núm. 116 de 12 de mayo de 1943 (Leyes de ese año, página 335), se adicionó un nuevo inciso 8(a) a la sección 16 bajo el cual tributaba "todo vehículo que no sea de autoimpulsión . . . , a excepción de aquellos vehículos que sean hechos expresamente para ser arrastrados mediante la fuerza humana o animal, . . ." Posteriormente este inciso fue objeto de algunas enmiendas, pero no fue hasta el año 1947 que expresamente se mencionan los trailers y semitrailers como vehículos tributables.(²) Disponía dicho inciso, que es la ley aplicable en el caso, lo siguiente:

---

(²) Ley Núm. 425 de mayo 14 de 1947.

"§ 1040.—Vehículos que no son de autoimpulsión

Sobre todo vehículo que no sea de autoimpulsión, a excepción de aquellos vehículos que sean hechos expresamente para ser arrastrados mediante la fuerza humana o animal y los carros y carretas que sean diseñados expresamente para ser tirados por tractores mosquitos, *jeeps* y otros vehículos análogos en el arrastre de productos agrícolas dentro de la finca, que se venda, traspase, use, consuma o introduzca en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico, *Disponiéndose,* que los *trailers* o *semitrailers* que se vendan, traspasen, usen, consuman o introduzcan en Puerto Rico, estarán sujetos a un impuesto de un quince (15) por ciento sobre el precio de venta en Puerto Rico." (13 L.P.R.A., págs. 711 y 712.)

Al describir los *trailers* que fueron objeto de la imposición y cobro de arbitrios en este caso, el Tribunal de instancia se expresó así:

"Las pequeñas viviendas de que se trata fueron llevadas, construidas ya, sobre sus propias ruedas adheridas a, y con rotación en torno de, ejes que se hallan fijos a la armadura inferior de las propias estructuras. Tales artefactos eran ciertamente viviendas, *básica y principalmente,* aunque tuvieran ciertas características de vehículos—o sea de carruajes de relativamente *fácil* movimiento sobre la superficie de la tierra que sirvan para y se acostumbre utilizar en la *transportación de personas o cosas.*

"Los artificios [sic] de que se trata no reunen condiciones efectivamente apropiadas para realizar esto último de manera eficiente y económica. Lo que en ellos se puede transportar, *de vez en cuando,* es el poco moblaje que, para viviendas, en ellos haya. Los espacios incómodos así como su fregadero, cocina, alacena, etc., de que están provistos, son partes permanentes de ellos. Son, más bien, sustitutos lujosos de tiendas de campaña. Como tales tiendas o barracas de campaña es que se usan principalmente.

"No reunen condiciones propias de *verdaderas* viviendas, que no sean las existentes en zonas arrabaleras. Son tipos especiales de barracas utilizables en *campamentos* para empleados en obras en construcción, en regiones que, de ordinario, se hallan retiradas de zonas urbanas.

"Pero las propiedades especiales que las caracterizan, y sus incomodidades como viviendas por períodos de tiempo prolongados, no convierten, a estos artefactos, en los *vehículos* que, opinamos, el *legislador tuvo en mente* cuando aprobó el artículo 16(8a), supra." (Pág. 19, T.A..)

La determinación de si las casas sobre ruedas (*house trailers*) tributaban bajo la Ley de Rentas Internas no puede descansar en el uso predominante que se daba a las mismas. Si bien la prueba de la demandante tendió a demostrar que las casas *trailers* estaban montadas en bloques de hormigón en la Base Ramey y tenían facilidad de luz eléctrica, agua y alcantarillado, no es menos cierto que fueron introducidas en Puerto Rico como coches para ser remolcadas y que efectivamente fueron llevadas de San Juan a Aguadilla y luego traídas a San Juan nuevamente sobre sus ruedas remolcadas por vehículos de autoimpulsión. En esa forma podían trasladarse por nuestras carreteras a cualquier parte de la isla, dándose así el uso para el cual han sido diseñadas, esto es, de vehículo remolcado. ▬

El legislador no definió en la ley los términos *"trailers"* y *"semi-trailers"*. Tampoco usó vocablos en castellano para describirlos. La palabra *trailer* ha sido traducida al castellano, entre otras acepciones, como "carro o coche remolcado."([3]) De acuerdo con la definición que da el diccionario de Webster, el término "trailer" incluye un vehículo, equipado para usarse como vivienda y remolcado por un automóvil de pasajeros.([4]) No hay controversia en cuanto a que estos artefactos (casas *trailers*) se construyen para moverse sobre sus propias ruedas, remolcados por otros vehículos de autoimpulsión. Difícilmente podrían eliminarse de la clasificación de *trailers*. Nótese que al mencionarse los *trailers*

---

([3]) Appleton's nuevo Diccionario Inglés-Español y Español-Inglés.

([4]) "Trailer. 1. . . . 2. A highway vehicle designed to be hauled, esp. by an automotive vehicle, as a truck trailer or a semitrailer; especif. one equipped for use as a dwelling, to be drawn by a passenger automobile." Webster's *New Collegiate Dictionary; Moffitt* v. *State Automobile, Inc. Ass'n.*, 300 N.W. 837.

322

y semitrailers por vez primera en la enmienda de 1947, se incluyen bajo el inciso que cubre a los "vehículos que no son de autoimpulsión". Se explica que se mencionaran en un "Disponiéndose" al final del inciso 8(a) porque el impuesto a estos vehículos era mayor que el fijado a los demás vehículos que no eran de autoimpulsión.(⁵)

Cometió error el tribunal a quo al resolver que las casas trailers introducidas por la demandante en Puerto Rico no estaban sujetas al pago de los arbitrios señalados en la Ley de Rentas Internas. ■

Sin embargo, no cometió error al resolver que los compresores movidos por aceite *diesel* no tributaban bajo la Ley de Rentas Internas. Esta misma cuestión la resolvimos en contra del Secretario de Hacienda, en el caso de *San Miguel and Co., Inc.* v. *Secretario de Hacienda,* 82 D.P.R. 680, seguido en *Island Properties Co., Ltd.* v. *Secretario de Hacienda,* 82 D.P.R. 875 (1961).

*Se revocará la sentencia dictada por el Tribunal Superior en tanto en cuanto declara con lugar la demanda de reintegro de los arbitrios pagados por la demandante sobre las casas trailers introducidas por ella en Puerto Rico.*

(⁵) Si bien en la enmienda al inciso 8(a) de 1955 se les llama a estos vehículos por su nombre, denominándolos "casa sobre ruedas" (*house trailers*), ello se debe probablemente a que había que distinguirlos en alguna forma de los otros remolques (*trailers* y *semi-trailers*) ya que estos últimos estaban exentos del pago de arbitrios mientras que las casas sobre ruedas, tributaban. (Véase Ley Núm. 59 de 10 de junio de 1955.)