ASOCIACIÓN DE HOTELES Y DE TURISMO DE PUERTO RICO, ETC., demandante y recurrente, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC., demandado y recurrido.

*Número:* RE-91-399          *Resuelto:* 26 de octubre de 1992

*María Milagros Soto*, abogada del recurrente; *Jorge E. Pérez Díaz, Procurador General, María Adaljisa Dávila, Procuradora General Auxiliar,* y *Ricardo Alequín Pons, Procurador General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

A raíz de aprobarse la Ley Núm. 33 de 20 de julio de 1989 (15 L.P.R.A. sec. 76), el Comisionado de Instituciones Financieras (en adelante Comisionado) comenzó a cobrar, en concepto de derechos de franquicia a los concesionarios de salas de juego, determinada cantidad computada a base del total jugado anualmente, *incluso lo jugado en las mesas y en las máquinas tragamonedas.*

La Compañía de Turismo de Puerto Rico y la Asociación de Hoteles y de Turismo de Puerto Rico (en adelante Asociación) discreparon de la interpretación del Comisionado y solicitaron al Secretario de Justicia su opinión. El 1ro de febrero de 1990 dicho funcionario refrendó la actuación del Comisionado. Inconforme, ante el Tribunal Superior, Sala de San Juan, la Asociación la impugnó.

Oportunamente dicho foro (Hon. Evaristo M. Orengo, Jr., Juez), concluyó que el texto de la Ley Núm. 33, *supra,* era claro y que al disponer "que los derechos de franquicia que deben pagar los concesionarios que operen facilidades para juegos de azar se fijarán de acuerdo al 'total jugado anualmente' no hizo exclusión alguna ni proveyó para que se excluyera del cómputo el producto de las máquinas tragamonedas". Apéndice I, pág. 7. Además, determinó que el pago de la franquicia no constituía un impuesto y, por lo tanto, el incluir el producto de las máquinas tragamonedas para computar los derechos de franquicia no era una doble tributación. Razonó que "una parte tiene la prerrogativa de solicitar o no al Estado una franquicia, aún cuando ello conlleve el pago de unos derechos, en cambio, tratándose del pago de impuestos está legalmente impedida de decidir si los paga o no". Íd., págs. 9–10.

Ante nos la Asociación cuestionó dicho dictamen. Mediante orden de mostrar causa, revisamos.

## II

■ En lo *procesal* no erró el foro de instancia al dictar sentencia sin celebrar una vista evidenciaria. Conforme las alegaciones, desde el primer momento la controversia se limitó a una cuestión pura de derecho: interpretar la Ley de Juegos de Azar, según enmendada, por las Leyes Núms. 2 de 30 de julio de 1974 (15 L.P.R.A. secs. 71–72, 74–76 y 78), 46 de 2 de julio de 1985 (15 L.P.R.A. secs. 71, 74 y 79a) y 33, *supra*, con sus respectivos historiales legislativos. El trámite se ajustó a esa realidad; y a tal efecto, ambas partes comparecieron y expusieron sus contenciones mediante memorandos de derecho. La queja de la Asociación es inmeritoria.

■ En lo *sustantivo* tampoco incidió el ilustrado tribunal de instancia. La Ley de Juegos de Azar, enmendada por la Ley Núm. 46, *supra*, autoriza el funcionamiento de máquinas tragamonedas en las salas de juego explotadas bajo franquicia expedida por el Secretario de Hacienda. Por disposición de la propia ley, las tragamonedas pertenecen a la Compañía de Turismo de Puerto Rico, quien está facultada a ubicarlas y operarlas. No obstante, la Ley de Juegos de Azar dispone que el "concesionario de una franquicia de juegos de azar bajo esta sección podrá permitir la instalación de las máquinas en sus salas de juegos, *a cambio de una proporción del rédito al operador según se dispone en la sec. 74 de este título, y sujeto al pago de los derechos de franquicia fijados en la sec. 76 de este título*". (Énfasis suplido.) 15 L.P.R.A. sec. 72. Es claro, pues, que la Asamblea Legislativa impuso a los concesionarios de las salas de juego *dos* (2) condiciones para que pudieran operarlas: que un porciento de las ganancias obtenidas en las máquinas se destinara al erario y, además, que se pagaran los derechos de franquicia según reglamentados por la Ley de Juegos de Azar.

■ La Ley Núm. 33, *supra*, enmendó la Ley de Juegos de Azar en lo relativo a que los derechos de franquicia se computarían tomando en consideración las zonas en que estaban localizadas las salas de juego; anteriormente variaban por zona desde un mínimo de seis mil dólares ($6,000) hasta un máximo de veinticuatro mil dólares ($24,000). Se eliminaron estas distinciones y se dispuso que los derechos de franquicia de todas las salas de juego se computarían tomando como fundamento el *total* jugado anualmente en cada sala de juego. Art. 2 de la Ley Núm. 33, *supra*, 15 L.P.R.A. sec. 76. Al sujetar el cómputo de los derechos de franquicia al "total jugado anualmente", el legislador no excluyó lo jugado en las máquinas tragamonedas. Coincidimos con la ilustrada sala sentenciadora de que ese lenguaje no permite, por interpretación, crear una exclusión no visualizada. A fin de cuentas, el "texto claro de una ley es la expresión por excelencia de la intención legislativa ...". *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 871 (1983).

■ Resolvemos que la Ley de Juegos de Azar establece un impuesto sobre las ganancias obtenidas en las máquinas. tragamonedas y a su vez ordena que el total jugado anualmente se utilice para computar los derechos de franquicia.

### III

Aclarado este extremo, notamos que el tribunal sentenciador concluyó que estas disposiciones de ley no imponían una doble tributación. Razonó que el pago de los derechos de franquicia no era susceptible de considerarse un impuesto, ya que no constituía un pago por obligación de ley, sino para obtener el privilegio de realizar una actividad en el Estado. El razonamiento es erróneo.

■ Ciertamente, aun cuando el pago de los derechos de franquicia se hace con el propósito de obtener la concesión de un privilegio para desarrollar ciertos negocios dentro

del Estado —*Artesian Water Co. v. State, Dept. of Hwys. & Transp.*, 330 A.2d 432, 440 (1974)— dicho pago se ha caracterizado como un impuesto requerido para conceder tal autorización. J.E. Nowak, R.D. Rotunda y J.N. Young, *Constitutional Law*, Minnesota, Ed. West Publishing Co., 1978, págs. 342–347. En igual sentido, recientemente en *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692, 703–704 (1988), al evaluar las patentes municipales, citando a McQuilin Mun. Corp., expresamos que "[c]uando son impuestos únicamente para rentas públicas, los derechos o cargos por la licencias son contribuciones y sólo pueden sostenerse si están basados en el poder de imposición de contribución". (Énfasis suprimido.)

## IV

En Puerto Rico no existe prohibición constitucional a la doble tributación; sin embargo, "la intención legislativa al imponer doble contribución debe ser clara y explícita y nunca se presume". *Sucn. Giusti v. Tribl. Contribuciones*, 70 D.P.R. 117, 122 (1949).

Evidentemente la Ley de Juegos de Azar impone una doble tributación para los concesionarios de salas de juego de azar que operan tragamonedas; esto es, recae sobre la misma propiedad dentro de la misma jurisdicción. *P.R. Iron Works v. Buscaglia, Tes.*, 62 D.P.R. 868 (1944). En el caso de autos, ambos impuestos son sobre el dinero generado por las máquinas tragamonedas.

A través de la Ley de Juegos de Azar, repetimos, la Asamblea Legislativa expresamente ordenó la doble tributación al establecer que se podrían ubicar máquinas tragamonedas en las salas de juego: "a cambio de una proporción del rédito al operador según se dispone en la sec. 74 de este título, y sujeto al pago de los derechos de franquicia fijados en la sec. 76 de este título" y, al más adelante disponer, que los derechos de franquicia se computarían a

base del "total jugado anualmente" en las salas de juego *sin* excluir lo jugado en las tragamonedas.

■ Como toda revisión se da contra la sentencia y no contra sus fundamentos —*García v. Montero Saldaña*, 107 D.P.R. 319, 331 (1978)— *procede sentencia confirmatoria de la interpretación del Comisionado de Instituciones Financieras sobre el alcance del Art. 2 de la Ley Núm. 33, supra.*

El Juez Asociado Señor Alonso Alonso concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Hernández Denton disintió con opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que la interpretación que hoy hace la mayoría de este Tribunal de la Ley de Juegos de Azar, Ley Núm. 33 de 20 de julio de 1989, según enmendada, 15 L.P.R.A. sec. 76, establece una doble tributación a los casinos en Puerto Rico, sin que surja claramente y expresamente que la Asamblea Legislativa tuvo la intención de imponer dicho gravamen, disentimos.

I

La controversia del caso de marras se limita a determinar si la Asamblea Legislativa tuvo la *intención expresa* de imponer una doble tributación a los casinos que tienen ubicados en sus facilidades máquinas tragamonedas propiedad de la Compañía de Turismo de Puerto Rico. Es preciso que señalemos cuáles son las improvistas legales que nos ayudan al análisis de esta controversia. Veamos.

A finales de la década del 40 el esquema tributario referente a los casinos era uno en el cual los derechos de franquicia de un casino se fijaban bajo el criterio de la "localización por zona". Ley Núm. 221 de 15 de mayo de 1948 (15 L.P.R.A. secs. 71–79). La autoridad para la expedición de franquicias para la explotación de salas de juegos de azar residía en el Secretario de Hacienda.([1]) Los juegos de azar por los que se pagaban derechos de franquicias eran los juegos de ruleta, dados, juegos de barajas de *blackjack* y bingo. Estos juegos eran operados, como es al presente, por los propios casinos. Sin embargo, para aquella época no se autorizaba en Puerto Rico el uso de máquinas tragamonedas.

Fue mediante la Ley Núm. 2 de 30 de julio de 1974 (15 L.P.R.A. secs. 71–72, 74–76 y 78) que se autorizó de manera restrictiva el uso de estas máquinas tragamonedas. Su uso es restrictivo porque la única autorizada *a manejar y a comprar dichas máquinas es la Compañía de Turismo de Puerto Rico y no los casinos*. 15 L.P.R.A. sec. 74. Por esta razón, toda la contabilidad de lo que éstas producen se realiza por la propia Compañía de Turismo de Puerto Rico y en nada intervienen los casinos. Del ingreso bruto producido por las tragamonedas se deduce el costo amortizado de las máquinas y su costo operacional. La diferencia representa el ingreso neto anual. Este ingreso se distribuye de la manera siguiente: (1) El diecisiete por ciento (17%) es para la Compañía de Turismo de Puerto Rico; (2) *El veinte por ciento (20%) se considera un impuesto sobre la transacción de las tragamonedas*, y éste se envía al Secretario de Hacienda para el Fondo Educacional; (3) otro veinte por ciento (20%) es para el Fondo General de la Universidad de Puerto Rico; (4) un nueve por ciento (9%) se remite a un fondo especial que se conoce como "Fondo para el Desarrollo de la Industria Turística de Puerto Rico", y por último

---

([1]) Esta autoridad fue transferida posteriormente al Comisionado de Instituciones Financieras. Véase Ley Núm. 4 de 11 de octubre de 1985 (7 L.P.R.A. sec. 2007).

(5) un treinta y cuatro por ciento (34%) se remite mensualmente a los concesionarios, o se utiliza con respecto a deudas contributivas de los concesionarios de franquicias, ya tomadas y puestas al cobro en el Departamento de Hacienda. 15 L.P.R.A. sec. 74.

Ahora bien, al aprobarse la Ley Núm. 33, *supra*, se enmendó la Ley de Juegos de Azar, 15 L.P.R.A. sec. 76 y ss., *a los únicos fines de eliminar* el criterio de localización para computar los derechos de franquicias y se dispuso que se computaría a base del *"total jugado anualmente"*. 15 L.P.R.A. sec. 76.

*Sección 76. Juegos de azar en salas de juego con franquicias, autorizados —Derechos de franquicia; zonas*

Los derechos de franquicia que de acuerdo con la sec. 74 de este título deberán pagar los concesionarios que operen facilidades para juegos de azar cubiertos por las secs. 71 *et seq.* de este título, se fijan en la cantidad que se establece a continuación:

| Total Jugado Anualmente | Derechos de Franquicia |
|---|---|
| menos de $25 millones | $ 50,000 |
| en exceso de $25 millones hasta $50 millones | 100,000 |
| en exceso de $50 millones hasta $100 millones | 150,000 |
| en exceso de $100 millones | 200,000 |

La Compañía de Turismo determinará el equipo de artefactos de juego que podrá usarse en dichas facilidades mediante el pago de tales derechos y los distintos tipos de juegos de azar que se autorizan a cada concesionario. Al concluir su año contributivo cada concesionario deberá someter al Secretario copia de sus estados financieros certificados, acompañados de una opinión especial del contador público autorizado que certificó los mismos en la cual se certifique el total de lo jugado durante el año. 15 L.P.R.A. sec. 76.

Tanto el Comisionado de Instituciones Financieras como

el Secretario de Justicia entienden que el "total jugado anualmente" no sólo incluye lo jugado en las mesas del casino, sino también lo jugado en las máquinas tragamonedas.

La mayoría de este Tribunal, al aceptar que el pago de los derechos de franquicia y el cobro del veinte por ciento (20%) del ingreso neto de las tragamonedas constituyen una doble tributación, sostiene que ésta es válida porque la Asamblea Legislativa tuvo la intención "clara y explícita" de imponer este doble gravamen.

Hemos tenido la oportunidad de revisar el historial legislativo de la ley y no podemos estar de acuerdo con que la Asamblea Legislativa *claramente* quizo incluir lo jugado en las máquinas tragamonedas a los fines de computar los derechos de franquicia.

La validez de un estatuto que imponga una doble tributación está supeditada a que la Asamblea Legislativa clara, expresa e inequívocamente haya querido imponer este doble gravamen. *Sucn. Giusti v. Tribl. Contribuciones*, 70 D.P.R. 117, 126 (1949); *San Miguel & Cía v. Díez de Andino, Tes.*, 71 D.P.R. 344 (1950). De no surgir claramente esta intención, no podemos validar la duda en contra del contribuyente.

Por ejemplo, si examinamos el texto del Art. 2 de la ley en cuestión, 15 L.P.R.A. sec. 76, nos daremos cuenta cuál legislador requirió de cada concesionario que presentara cada año contributivo una copia de sus estados financieros, acompañados de una opinión especial del contador público autorizado en la que certifique *el total jugado durante el año*.

Este requisito excluye lo jugado en las máquinas tragamonedas. Es evidente que el contador público autorizado se ve impedido de certificar lo jugado anualmente, si tiene que incluir lo jugado en las tragamonedas. El contador no tiene constancia de lo jugado en las tragamonedas porque éste no realiza la contabilidad de lo que producen

dichas máquinas.(²) Tampoco se puede tomar como lo jugado anualmente el treinta y cuatro por ciento (34%) que reciben los concesionarios en concepto de permitir que se coloquen las máquinas tragamonedas en sus facilidades porque esto no representa lo que se juega anualmente. En fin, el contador sólo podría certificar lo jugado en las mesas de juegos. Con este esquema legislativo es difícil pensar que la Asamblea Legislativa quisiera claramente incluir las máquinas tragamonedas para el cómputo de los derechos de franquicia. *Roig Commercial Bank v. Buscaglia, Tes.*, 74 D.P.R. 986, 997 (1953).

Por lo tanto, entendemos que es impermisible suplantar mediante fíat judicial la intención legislativa de imponer una doble tributación. En materia contributiva la duda favorece a la adopción de una interpretación más restrictiva de suerte que no se prive al contribuyente de la propiedad sin un debido proceso de ley. *Serrallés Galiano v. Srio. de Hacienda*, 84 D.P.R. 11 (1961).

Por todo lo antes expuesto, revocaríamos la sentencia de instancia y ordenaríamos que se devolvieran las contribuciones cobradas en exceso.

---

(²) La contabilidad de dichas máquinas las lleva a cabo la Compañía de Turismo de Puerto Rico.