DELAWARE POWER & LIGHT COMPANY, a Delaware corporation, Plaintiff,

*v.*

CITY OF NEWARK, a municipal corporation of the State of Delaware, Defendant.

*New Castle, February 28, 1958.*

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for plaintiff.

*James H. Hughes, III,* Dover, and *John S. Walker* and *Frank Miller,* Wilmington, for defendant.

SEITZ, Chancellor: In this action plaintiff, Delaware Power & Light Company, seeks a declaratory judgment that a certain "franchise fee" ordinance adopted by the defendant, City of Newark, on October 16, 1956, is invalid, illegal, unconstitutional and void. Plaintiff further seeks an injunction restraining the City from attempting to enforce the ordinance or collect the "fee" imposed thereby.

This matter comes before the court on plaintiff's motion for summary judgment. Defendant suggests that the motion must be denied either on the merits or because there are material facts in dispute.

I shall narrate the undisputed material facts. Plaintiff is a Delaware corporation legally engaged in business in Delaware as a public utility distributing electricity pursuant to a state franchise. Defendant is a municipal corporation of the State of Delaware.

Since the plaintiff and the City have had relations dating back a good many years it may be pertinent to narrate their past contacts. Newark's status has changed in the last few years from a "town" to a "city". For convenience, however, I shall refer to it at all times as the "City".

By a franchise ordinance dated August 3, 1914, and accepted August 28, 1914, the City granted plaintiff the right to erect poles and wires on certain designated streets with the proviso that plaintiff would not sell electricity within the City to anyone unless requested to do so by the Council. By a further ordinance dated July 7, 1930, plaintiff was authorized to erect poles and wires on certain identified streets with the proviso that plaintiff would not sell electricity to any consumer "within the present limits of the Town of Newark" without the consent of the Council, except National Vulcanized Fibre Company and its successors, etc.

Prior to 1930, the only customer served by plaintiff within the then limits of the City was National Vulcanized Fibre Company. All of the other customers within the City limits were served electricity by the City.

About 1940, plaintiff commenced the sale of electricity to Continental-Diamond Fibre Company and has continued to do so ever since. Whether the sales to this entity can be considered as approved action under the agreement I need not decide, although, there is a possible dispute in the record on this score.

By an agreement between plaintiff and the City on November 21, 1949, plaintiff agreed to sell the City electricity for resale in the City of Newark upon certain terms and conditions. This agreement is still in effect. It provides, inter alia, that plaintiff will not engage in the selling of electricity within the corporate limits of Newark, except as Newark has previously authorized or may hereafter authorize plaintiff so to do. The agreement also provides that should the corporate limits of the City be further extended, the City will have the sole right to serve customers in the added area, except as the City has authorized plaintiff to do so.

A new charter was adopted for the City of Newark on July 10, 1951, under which the corporate limits of the City were greatly extended. 48 *Del.Laws, Chap.* 152. There was added a substantial area between the old and new City limits that had previously been served electricity by plaintiff. Apparently as visualized by the provisions of the agreement of November 21, 1949, the City Council passed an ordinance on July 17, 1951, which authorized plaintiff to continue to serve electricity to its customers in the newly embraced area, to sell to a defined type of new customer, and to maintain existing transmission lines, together with minor extensions of same.

Plaintiff has continued to serve electricity not only to the two Fibre Companies located within the old City limits but also to certain customers in the area between the the old and new City limits.

On October 16, 1956, the City Council of the defendant passed the ordinance under attack, which purported to impose a franchise fee on plaintiff by name. Section 1 of that ordinance provides as follows:

> "Section 1. A franchise fee is hereby imposed and levied upon the distribution and sale of electricity by Delaware Power & Light Company within the City of Newark to all customers other than the City itself. Said franchise fee shall be calculated upon the amount of electricity so sold at the rate of ½ mill ($.0005) for each kilowatt hour thereof."

Primarily, plaintiff makes no point about the fact that plaintiff is by name the only entity made subject to the franchise fee. Nor does plaintiff raise any question about the "amount" of the fee.

▇▇▇ Although defendant apparently argues to the contrary, the ordinance under attack cannot be justified as an exercise of the City's taxing power because the limited taxing power delegated to the City clearly does not authorize the imposition of a gross sales tax. In case of doubt, such a matter is resolved against the finding of such power. Compare *Consolidated Fisheries Co. v. Marshall,* 3 *Terry* 283, 32 *A.2d* 426. In any event, the City under its charter is given the "power to levy and collect franchise fees" (48 *Del.Laws, Chap.* 152, § 34), and the resolution involved explicitly purports to impose a franchise fee upon plaintiff.

▇▇▇ Defendant argues in effect that "franchise" as used in defendant's charter (48 *Del.Laws, Chap.* 152, pp. 450-1) gives it the right to grant or refuse permission to plaintiff to distribute electric power within the City. Certainly the language of the Charter falls far short of giving the City the right to grant such a franchise. Indeed, 26 *Del.C.* § 906 seems by implication to deny such power. I therefore stress the fact that neither the statute nor the charter gives the defendant the right to grant a franchise to distribute electricity within its City limits. Thus, to the extent the November 21, 1949, agreement between plaintiff and defendant deals with the sale of electricity it is not concerned with the granting of a franchise.

Defendant must therefore justify the ordinance, if at all, under some other franchise-granting power given it by the State. This brings us to the first major question: Was the action of the Council in adopting the ordinance an unauthorized exercise of power? In answering this question it must be kept in mind that the fee is not limited to franchises granted plaintiff after its adoption. Indeed, it must be fairly read as being applicable to all franchises exercised by plaintiff at the time the ordinance was passed.

▇▇▇ The first point which must be emphasized is that plaintiff has been and is exercising a definite franchise to distribute electricity

which was granted by the State. Municipalities on the other hand have the power to impose other conditions only to the extent that such power is delegated to them by the State. See *Eastern Shore Public Service Co. v. Town of Seaford,* 23 *Del.Ch.* 199, 2 *A.2d* 265. The next logical question then is whether the City has been granted the power to impose other conditions.

The only power residing in a municipality to impose conditions which has been called to my attention is contained in 26 *Del.C.* § 906, which provides in part that an electric utility:

> "* * * may use the public roads, highways, streets, avenues and alleys in this State for the purpose of erecting posts or poles on the same, to sustain the necessary wires and fixtures. The consent of the council, town commissioners or other persons having control over the public roads, highways, streets, avenues and alleys of the city, town and district in or upon which the posts or poles are to be erected, shall first, and as a condition precedent, be obtained."

This statute requires an electric utility to obtain the prior consent [1] of the governing body of a city before it can use its streets and alleys to erect poles [2]. And the municipality may impose reasonably necessary and proper restrictions or conditions upon its consent because of the granted power. *Town of Seaford* case, above.

At the date of the passage of the ordinance under attack plaintiff was operating under franchises granted by the City to maintain poles in the public streets and alleys, e. g., see ordinances of August 3, 1914 and July 7, 1930. Such franchises were, of course, properly granted by the City.

---

1. Both parties have treated the "consent" requirement as creating a limited franchise-granting power in the city. The court will do likewise.

2. Defendant points to 17 *Del.C.* § 132(c) (8), which gives franchise-granting power with respect to state highway use to the Highway Department. Its counsel seems to argue that plaintiff has not shown that it obtained the Highway Department's permission. This is not a franchise which defendant can rely upon to justify its imposition of a franchise tax.

Defendant argues that while paragraph 3 of the resolution of July 17, 1951, also contains the grant of a franchise to plaintiff to maintain its existing electric transmission lines and facilities in the annexed area, it is a temporary measure and may be terminated at any time by Council. Defendant therefore argues that it could be made subject to additional conditions at any time and the franchise fee ordinance is such a condition.

It must be emphasized that the resolution of July 17, 1951, in the main, fixed the contract obligations between plaintiff and defendant with respect to the distribution of electricity. As stated, to this extent it was not a franchise matter. But assuming without deciding that plaintiff needed a franchise from defendant to continue to use existing facilities in the annexed area, it is first of all apparent that the franchise fee ordinance is not limited to such facilities. Moreover, if paragraph 3 of the resolution created a franchise, it was still in existence when the franchise fee ordinance was passed. There was no reservation of the right to modify the franchise during its term, whatever it might be. It is argued by defendant that the resolution indicates that it is a temporary measure, but until legally terminated it cannot be impliedly modified by the unilateral imposition of a subsequent condition in the form of a franchise fee.

The fair inference is that none of the existing franchises were granted subject to any conditions here pertinent. Nor did the City, at the time it granted the franchises, reserve the right to modify or amend them in the future. If defendant feels that the fact stated in the previous sentence is not warranted on this record, it may so indicate to the court.

It follows from the considered dicta of our Supreme Court in the Town of Seaford case that the quoted Code provision (26 *Del.C.*, § 906), giving the limited franchise-granting power to the City, must be construed to mean that once the franchises were granted, the City could not thereafter modify them while they were extant. This is particularly true where to do so would impose a substantial additional burden on the grantee. 12 *McQuillin, Municipal Corps.* (3rd ed.)

§ 34.44. Certainly the franchise fee here imposed would be such a burden.

I am not called upon to decide the duration of any franchise existing at the time this ordinance was adopted. However, I think it must be concluded upon this record that their terms, whatsoever they might be, had not expired at the time the ordinance was passed.

Defendant argues at length under various theories that since defendant could terminate at least one of the franchises at will it could impose the franchise fee as a future condition. Assuming the accuracy of defendant's factual premises, the answer is that the ordinance imposes the fee on all existing franchises without limitation. The ordinance does not purport to be imposed as a condition to the granting of a new franchise. Even if the determination of the franchise issue, as applied to the annexed territory, would raise disputed matters, it does not prevent a determination here. I say this because the ordinance applies to all franchises and as to some of them there is no disputed material fact. The ordinance must therefore stand or fall on the basis of the defendant's right to impose such a burden on all of plaintiff's then existing franchises.

■ We thus have a situation where the defendant has granted certain franchises to plaintiff without reserving the right to impose future terms and conditions. Yet, during the terms of the franchises it has purported to impose a franchise fee. As I find the law, unless the fee is imposed at the time the franchise is granted or the power to amend, etc., is reserved at that time, it is beyond the power of the Council thereafter to impose it during the term of the franchise. See *Town of Seaford* case, above, and see 12 *McQuillin, Municipal Corps.,* (3rd ed.), § 34.44.

Here the power was neither exercised nor reserved at the time the franchises in question were granted. Yet, the ordinance levying the franchise fee, fairly construed, applied to plaintiff's then existing franchises. It follows that the Newark City Council was without legal power to adopt the ordinance of October 16, 1956.

Plaintiff's motion for summary judgment declaring the ordinance unenforceable and restraining action to enforce it will be granted.

Present order on notice.